**Reversed and Remanded and Opinion filed March 31, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00434-CV

---

### GALVESTON CENTRAL APPRAISAL DISTRICT, Appellant

### V.

### VALERO REFINING - TEXAS L.P., Appellee

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11-CV-1442**

---

### O P I N I O N

Appellee Valero Refining-Texas L.P. filed a petition for review of its 2011 property taxes in the trial court, arguing that appellant Galveston Central Appraisal District (GCAD) had appraised Valero's Texas City refinery unequally and that the refinery's appraised value should be reduced under section 42.26 of the Tax Code. Following a trial, the jury found that portions of the refinery GCAD had appraised at approximately $527 million were unequally appraised, and that the "Equal and

Uniform Value" of those portions was approximately $337 million.  The trial court rendered judgment on the verdict, and GCAD brings this appeal.

GCAD raises three issues on appeal, but we need only reach the first two.  In its first issue, GCAD argues the trial court lacked jurisdiction over Valero's petition for review because Valero did not challenge the appraised value of the refinery as a whole and also did not state the amount of taxes it proposed to pay.  In its second issue, GCAD asserts that legally and factually insufficient evidence supports the jury's determination of the equal and uniform value of Valero's refinery.

Although we conclude the trial court had jurisdiction over Valero's petition, we agree with GCAD that the evidence is legally insufficient to support the jury's equal and uniform valuation of Valero's refinery.   Because there is some evidence of unequal appraisal, we reverse the judgment and remand for a new trial.

### BACKGROUND

#### A.    GCAD's appraisal and Valero's appeal

Valero owns the refinery located at 1301 Loop 197 South, Texas City, Galveston County, Texas.  As part of its responsibility to appraise all property in Galveston County, GCAD assigned numerous separate account numbers to component parts of the Valero refinery.[1]  GCAD, as it is required to do, prepared a 2011 appraisal of the refinery, valuing it at $1,046,406,150.

---

[1] The record is unclear on the exact number of accounts GCAD assigned to the Valero refinery.  Valero exhibit 4, prepared by Hugh Landrum, the appraiser retained by GCAD to perform its annual industrial appraisals, lists ten account numbers for the Valero refinery. During his trial testimony, however, Landrum admitted he excluded certain accounts from his appraisal.  Valero trial exhibit 18 indicates the Valero refinery had twelve account numbers. Finally, Valero's trial counsel represented to the trial court that there were fifteen account numbers assigned to the refinery.  Valero's expert witnesses did not address this inconsistency or offer any explanation for not including all accounts associated with the refinery in their equal-and-uniform analysis.

2

Valero protested the appraised value before the Galveston County Appraisal Review Board (ARB). The record is not clear regarding whether all or only some account numbers were included in this protest. The ARB granted Valero some relief and issued orders reducing the appraised value of the refinery. Valero then appealed the ARB's orders by filing a petition for review in district court. *See* Tex. Tax Code Ann. §§ 42.01, 42.21 (West 2008). In its petition, Valero alleged that (1) the 2011 values set by the ARB for five of the accounts associated with the refinery were appraised over their market values; and (2) the values were also appraised in a manner that was neither equal nor uniform. *See* Tex. Tax Code Ann. §§ 42.25–42.26.

Valero later amended its petition to drop the market-value challenge. This left only Valero's claim that the refinery was not appraised equally with comparable properties. In order to proceed with its appeal, Valero paid the full amount of taxes due on the refinery at the value that had been certified by the ARB. *See* Tex. Tax Code Ann. § 42.08(b)(2).

## B. The trial court rejects GCAD's jurisdictional challenges

Prior to trial, GCAD filed a plea to the jurisdiction asking the trial court to dismiss Valero's appeal for failure to state the amount of taxes it proposes to pay, which GCAD argued was a jurisdictional requirement. *See* Tex. Tax Code Ann. § 42.08(b–1) (West 2008). The trial court denied the plea.

On the first day of trial, Valero sought leave to amend its petition to drop its challenge to the appraised value of two accounts: R364374 for TNRCC pollution control equipment, and R234000 for personal property and inventory.[2] The

---

[2] GCAD's only objection to the amended petition was that it was contradictory. The record indicates Valero revised the amended petition in response to that objection and GCAD lodged no further objections.

remaining three accounts being challenged were: R293410 for process units and various support facilities, R293411 for port tank facilities, and R422670 for crude oil tank facilities. The trial court granted Valero leave to file the amended petition.

GCAD then moved to dismiss Valero's appeal again. GCAD argued that once Valero amended its petition to remove the two account numbers, there was no longer a justiciable issue in the case because Valero was required to challenge all account numbers in its appeal. The trial court denied GCAD's motion, and the case proceeded to trial.

## C.    Evidence regarding the three Galveston County refineries

The evidence at trial showed that there were two other refineries in Galveston County in 2011, one owned by BP Products (NA), Inc. and the other owned by Marathon Petroleum Company. Valero took the position that the disputed portions of its refinery were comparable to similar portions of the BP and Marathon refineries. Valero also asserted that when the appraised values of these portions of the BP and Marathon refineries were appropriately adjusted, the median of the adjusted values was less than the appraised values of the equivalent portions of Valero's refinery. Thus, contended Valero, the appraised values of its portions should be reduced to the median. *See* Tex. Tax Code Ann. § 42.26(b).

Much of the trial testimony focused on differences in the three refineries, the appropriate adjustments to be made as a result, and the appropriateness of—and methodology for—comparing the adjusted values of the refineries. Although it was undisputed at trial that not all refineries are the same, there was agreement that the three Galveston County refineries share certain characteristics. These include: (1) each refinery sits on land; (2) each processes crude oil and produces fuel oils and other petrochemical products; (3) each has facilities for storing crude oil, feed stocks used in the refining process, and finished products prior to sale; (4) each has

4

access to utilities, pipelines, and port facilities; and (5) each has support facilities within the refinery grounds such as warehouses for spare parts and other repair/maintenance supplies, functioning maintenance shops and laboratories, administration buildings, and personal property suitable for a functioning complex industrial operation. Each refinery also has pollution control equipment mandated by the federal government or the Texas Commission on Environmental Quality (TCEQ).[3] Pollution control equipment can be exempted from ad valorem taxation by the TCEQ, but it was undisputed at trial that none of the three refineries' pollution control equipment was fully exempt from taxation. It was also undisputed that Valero received a notice of market value for its pollution control equipment.

Regarding differences among the refineries, the evidence showed that Valero's refinery is a heavy-conversion refinery that contains a coker process unit. A heavy-conversion refinery such as Valero's produces various oil-based products, and in the refining process it uses up the oil completely until the only thing left is a residual solid called coke. Valero's refinery produces gasoline, diesel, jet fuel, kerosene, and naphtha, among other products. Valero's refinery has a capacity to process approximately 258,000 barrels of crude oil per stream day through its crude unit. Once the crude oil enters the refinery, it is initially processed through the crude unit. The cuts or fractions produced in the crude unit are then sent through other processing units in the refinery to create finished products. Valero's refinery has a large number of those processing units.

BP's refinery, like Valero's, is a heavy-conversion refinery with a coker unit. The BP refinery is far larger than the Valero refinery, as its crude unit has the

---

[3] The Texas Commission on Environmental Quality was formerly known as the Texas Natural Resources and Conservation Commission or TNRCC.

5

capacity to process approximately 475,000 barrels of crude oil per stream day. In addition, the BP refinery has many processing units used to produce various finished products.

Marathon's refinery is the smallest and least complex of the three refineries. It has the capacity to process 80,000 barrels of crude oil per stream day. Marathon's refinery is considered a medium-conversion refinery. Although the Marathon refinery possesses many of the same processing units as its larger neighbors, it has a smaller total number of processing units than either of the other two refineries. Marathon also does not have a coker unit. Finally, Marathon's refinery does not contain a process unit for removing sulfur from fuel products. As a result, the products processed at Marathon's refinery cannot be sold directly in the United States. Instead, Marathon must send the refinery's finished products to another Marathon refinery to produce fuel that can be sold in the United States.

### D. Evidence regarding unequal appraisal

Roy Martin, the vice president in charge of Valero's ad valorem tax department, testified during the trial. Martin testified that Valero believed the total value of its Texas City refinery should be based only on the value of the refinery's process units, though he did not explain the basis for this belief. Martin explained that, as a result of this belief, Valero did not appeal the appraised value of the pollution control equipment and refinery personal property. Martin conceded, however, that these accounts formed part of the total value of the refinery and would be included in a sale if Valero decided to sell the refinery. Martin also recognized that GCAD is required to value all property in Galveston County and report those values to the Texas Comptroller.

Peter Killen and John Coyle were the appraisers retained by Valero. They both testified during the trial about the methodology they used to arrive at their

ultimate conclusion that GCAD had appraised the Valero refinery at a higher value than the other two comparable properties—the BP and Marathon refineries. The Valero experts reached their conclusion by using Equivalent Distillation Capacity (EDC) to compare the three refineries. According to Coyle, this methodology minimized the number of adjustments necessary to make the three properties comparable for purposes of an equal-and-uniform challenge.

Valero's experts testified that they calculated the EDC for each refinery by starting with the Nelson Complexity Factor for each processing unit in the refinery, and then multiplied that number by the capacity of that unit.[4] Using this method, they determined that, as of January 1, 2011, Valero's EDC was 2,940,579, BP's was 7,140,883, and Marathon's was 685,267.

In their next step, Valero's experts divided the total appraised value of the portions of Valero's refinery being challenged (and similar portions of the other refineries)[5] by the refinery's EDC to arrive "at an expression of the appraised value in terms of dollars per EDC." Valero's experts did not include the appraised value of any refinery's pollution control equipment in its total appraised value even though Killen testified that pollution control equipment (1) is part of each refinery, (2) would be included in a market-value appraisal, and (3) would be included in a sale of the facility. Using the above calculation, Valero's experts determined that Valero's refinery portions had a value of $179 per EDC, BP's had a value of $146 per EDC, and Marathon's had a value of $83 per EDC. The experts then determined that the median value of the BP and Marathon properties was $115 per

---

[4] The Nelson Complexity Factor is an approximation of the relative cost of a process unit when compared with the cost of a similarly-sized crude processing unit. Killen explained that Nelson Complexity Factors are published annually in the Oil & Gas Journal.

[5] The experts' report stated that they considered "all of the taxable operating improvements at each refinery" while excluding land, personal property, and pollution control equipment.

EDC.[6]  Finally, Valero's experts multiplied the median figure of $115 per EDC by Valero's EDC (2,940,579) to reach an equal and uniform appraised value of $337,415,593 for the challenged portions of Valero's refinery.  This represented a reduction of nearly $190 million from the 2011 appraised value of $526,796,990.

When asked on cross-examination, Killen offered no explanation for Valero's last-minute decision to drop the pollution control equipment from the appeal.  John Coyle was Valero's second appraisal expert, and he collaborated with Killen in the preparation of Valero's proposed equalized appraisal value for the refinery.  Coyle was also asked during cross-examination for an explanation of Valero's decision to drop the pollution control equipment.  Coyle's only explanation was that he and Killen performed two different calculations based on the information they were provided to show the "effect of treating the pollution control equipment, the exempt pollution control equipment as part of the problem as opposed to excluding it from the problem."  Coyle denied they had excluded the pollution control equipment from their calculations to skew the results in favor of Valero.

Hugh Landrum, GCAD's industrial appraiser, also testified during the trial.  Landrum testified that comparing the EDCs of the refineries is not a complete comparison of their values because EDC was not designed to be a representation of market value.  Instead, Landrum testified it compares construction costs to build refinery units.  Landrum also opined that an equal-and-uniform appraisal calculation for a refinery must include the pollution control equipment because it is an integral part of the overall refinery, which cannot operate without the equipment.

---

[6] They also performed the same calculation using appraised values that included pollution control equipment.  In that calculation, the median was $231 per EDC, yielding an equalized value for the Valero refinery of $678,108,731.

James Clarkson testified as GCAD's appraisal expert. Clarkson, like Landrum, testified that an equal-and-uniform comparison must include the value of each refinery's pollution control equipment because each refinery must have that equipment in order to operate. Clarkson also opined that two refineries represent an insufficient number of comparable refineries to conduct an unequal appraisal analysis. He then stated that he conducted that analysis anyway because that was his assignment. After conducting his own equal-and-uniform analysis of the three refineries, Clarkson opined that Valero's refinery was appraised below the median value of the two other Galveston refineries.

## E. The verdict and judgment

At the conclusion of the evidence, the jury found that the challenged portions of the Valero refinery had been unequally appraised in 2011. It then found that the equal and uniform value of those portions was $337,415,593. The parties agreed to submit the issue of attorneys' fees to the trial court in the event the jury found in favor of Valero. Following a hearing on fees, the trial court signed a final judgment declaring that the 2011 total appraised value for the three challenged accounts was $337,415,593. It also awarded Valero attorneys' fees of $100,000. This appeal followed.

## ANALYSIS

## I. The trial court had jurisdiction over Valero's tax appeal.

In its first issue, GCAD argues that the trial court lacked jurisdiction over Valero's tax appeal. GCAD makes two separate arguments within its jurisdictional challenge. First, it contends the trial court lost jurisdiction when Valero dropped its challenge to the ARB's valuation of the pollution control equipment account. In GCAD's view, as a result of this decision, Valero failed to appeal the appraised

9

value of the whole property as required by the Texas Tax Code, thereby depriving the trial court of jurisdiction. *See* Tex. Tax Code Ann. § 42.26 (West 2008). In its second argument, GCAD contends that the trial court did not have jurisdiction because Valero failed to meet the statutory requirement of stating the amount of taxes it proposed to pay at the time it filed its tax appeal in the trial court. *See id.* § 42.08(b–1).

## A.    Standard of review

We review a trial court's ruling on a plea to the jurisdiction de novo. *Woodway Drive, L.L.C. v. Harris Cnty. Appraisal Dist.*, 311 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.). During this review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* A defendant may prevail on a plea to the jurisdiction by demonstrating that even if all of the plaintiff's pleaded allegations are true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject-matter jurisdiction. *Id.* at 652.

When construing a statute, a reviewing court looks to the plain and common meaning of the statute's terms. *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We read a statute as a whole and not just isolated portions. *Id.* "If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute." *Id.*, *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

**B.    The trial court had jurisdiction because it timely petitioned for review of ARB orders, and Valero's amended petition alleged that the refinery was unequally appraised.**

The Tax Code provides that a property owner is entitled to appeal a final order of the appraisal review board determining the owner's tax protest.  Tex. Tax Code Ann. § 42.01(a), 42.21(a) (West 2008 & Supp. 2014).  It is undisputed that Valero owns the refinery located at 1301 Loop 197 South in Texas City, Galveston County, Texas, that it protested the appraised value of at least some property accounts within the refinery, and that it timely appealed the ARB's orders regarding some of the accounts by filing a petition for review in the trial court.

GCAD asserts that the trial court nevertheless lacked jurisdiction because Valero dropped its challenge to the appraised value of the account containing the refinery's pollution control equipment on the first day of trial, and it failed to challenge the value of other accounts within the refinery (such as the land) at all.  In support of this argument, GCAD cites section 42.26 of the Tax Code, which provides:

> The district court shall grant relief on the ground that a property is appraised unequally if . . . (3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

*See id.* § 42.26(a)(3).  In GCAD's view, Valero is attempting to appeal only the appraised value of some component parts of the refinery "property," a practice GCAD contends was held improper in *Covert v. Williamson Cent. Appraisal Dist.*, 241 S.W.3d 655, 658–60 (Tex. App.—Austin 2007, pet. denied).

Valero responds by asserting that each part of the refinery at issue here was appraised in a separate property tax account, and its protest of the value of those accounts was determined by ARB orders.  Valero points out that it is "entitled to

11

appeal . . . an [ARB] order" determining its protest, *see* Tex. Tax Code Ann. § 42.01(a), and it argues that nothing in the Code required it to protest the value of all property accounts in the refinery, secure adverse orders, and appeal all of those orders before the trial court could acquire jurisdiction.

Although we agree with GCAD that *Covert* prohibits piecemeal challenges to the value of an appraised property, we also agree with Valero that on these facts, its amended petition gave the trial court jurisdiction over this appeal. In *Covert*, the owners of three properties improved with car dealerships, each of which was appraised in a single tax account that valued the land as well as the improvements, attempted to appeal the valuation of the "land portion only" of each property. 241 S.W.3d at 657. The appraisal district did not challenge the trial court's jurisdiction but instead filed special exceptions, contending that the owners failed to state a cause of action because the Tax Code provides no remedy for unequal appraisal of only a portion of an appraised property. *Id.* The trial court dismissed the case and the Austin Court of Appeals affirmed. Focusing on what property had been appraised—there, the land and improvements together (*id.* at 658–59)—the court of appeals held "that a taxpayer challenging the equal and uniform assessment of an improved property under section 42.26 must allege that the *overall* appraised value of the property is unequal." *Id.* at 661 (emphasis added). The court explained that an owner may allege and introduce evidence that only certain parts of its property were valued unequally, but it cannot prevail in its challenge unless it can show that the value of the entire appraised property is not equal or uniform as a result. *Id.* at 659 & n.6.

In sum, each dealership in *Covert* was appraised in a single property tax account with a single value, and the court held that the owners' unequal appraisal challenge was improperly directed to a portion of that value only. The parties

12

dispute whether *Covert* applies when, as here, a facility is appraised in multiple property tax accounts and the owner's unequal appraisal challenge is directed to the entire value of certain accounts only. *Cf. Matagorda County Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 332–34 (Tex. 2005) (holding different aspects of real property that are part of same tract can be taxed separately under certain circumstances without resulting in double taxation); Tex. Att'y Gen. Op. No. GA-0790 (2010) (stating that assignment of land and improvements, whether separate or combined, to accounts is an administrative decision made by the chief appraiser). We need not decide that issue today, however, for two reasons.

First, *Covert* does not support GCAD's position that the trial court lacked jurisdiction. *Covert* did not address jurisdiction; it held, on special exceptions, that a taxpayer "cannot prevail" on an unequal appraisal claim under section 42.26 unless it proves that the value of the appraised property is not equal or uniform. 241 S.W.3d at 659. This holding echoes the language of section 42.26, which addresses when a court "shall grant relief on the ground that a property is appraised unequally." Tex. Tax Code Ann. § 42.26(a). That section does not address what an owner may appeal or how it may invoke the trial court's jurisdiction over an appeal—subjects covered by sections 42.01 and 42.21. *See Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) (explaining distinction between right of plaintiff to relief and jurisdiction of court to afford it); *Reliance Ins. Co. v. Denton Cent. Appraisal Dist.*, 999 S.W.2d 626, 629 (Tex. App.—Fort Worth 1999, no pet.) (holding trial court did not lack jurisdiction to consider unequal appraisal challenge to value of land portion of property consisting of both land and improvements, and reasoning that although failure to prove unequal appraisal of property as a whole would generally prevent owner from prevailing, it would not deprive court of

13

jurisdiction). As discussed above, it is undisputed that Valero filed a timely petition seeking review of the ARB's orders in compliance with sections 42.01 and 42.21, which we hold was sufficient to vest the trial court with jurisdiction.

Second, even if *Covert* were a jurisdictional limitation that foreclosed unequal-appraisal challenges to the value of only some property tax accounts within a multi-account facility, it would not require dismissal here because Valero alleged that the overall appraised value of the entire refinery is unequal. In its Third Amended Petition, Valero described the property at issue as consisting of "the real and business personal property located at 1301 Loop 197 S in Galveston County, Texas," "and/or" "the economic unit and any improvements, appurtenances, personal property and fixtures normally included in this kind of property." Although the amended petition also specifically listed three account numbers, Valero alleged that the "appraised value of the PROPERTY exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted" in violation of section 42.26 of the Texas Tax Code. Because Valero's amended petition alleged that the entire refinery was unequally appraised, the trial court had jurisdiction over the dispute and did not err when it denied GCAD's motion to dismiss based on *Covert*. *See Covert*, 241 S.W.3d at 659 & n.6; s*ee also Matagorda County Appraisal Dist.*, 165 S.W.3d at 335 (stating that property description is sufficient when property sought to be assessed may be identified from the description given).[7]

---

[7] GCAD also argues on appeal that the trial court abused its discretion by allowing Valero to amend its petition to drop its challenge to the pollution control equipment account because the amendment reshaped the trial and operated as a surprise. *See* Tex. R. Civ. P. 63. Valero responds that GCAD failed to object to the amendment and has not shown surprise. We need not decide this issue because the greatest relief available for an improper amendment would be a new trial, *see Stevenson v. Koutzarov*, 795 S.W.2d 313, 321, 323 (Tex. App.—Houston [1st Dist.] 1990, writ denied), and we are ordering a new trial on other grounds as explained below.

**C.    The trial court did not err when it refused to dismiss Valero's tax appeal pursuant to section 42.08 of the Texas Tax Code.**

GCAD next asserts that the trial court erred in refusing to dismiss Valero's tax appeal because Valero failed to provide with its original petition a written statement of the amount of taxes it proposed to pay as required by section 42.08(b-1) of the Tax Code. *See* Tex. Tax Code Ann. § 42.08(b-1) (West 2008).[8]    We disagree that a statement was required on these facts.

Section 42.08(b) requires a property owner, to avoid forfeiture of his right to obtain judicial review, to pay the lesser of: (1) the amount of taxes not in dispute, or (2) the current tax liability. *See* Tex. Tax Code Ann. § 42.08(b)(1)–(2) (West 2008);[9] *U. Lawrence Boze' & Assocs., P.C. v. Harris County Appraisal Dist.*, 368 S.W.3d 17, 27–28 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This payment is not due immediately upon filing the petition for review, but before the delinquency date for the tax year.  *Id.*  If the payment is not timely made, then (with certain exceptions) "the property owner forfeits its right to proceed to a final determination of the appeal" and the trial court loses subject-matter jurisdiction. Tex. Tax Code Ann. § 42.08(b); *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 23, 27, 31.

The statement requirement of subsection (b–1), on which GCAD relies, "applies only to an appeal in which the property owner elects to pay" the amount of taxes not in dispute under subsection (b)(1).  Tex. Tax Code Ann. § 42.08(b–1) (West 2008).  In this case, however, Valero paid the current tax liability in full

---

[8] After the trial in this case, the Legislature amended this section to state expressly that "[t]he failure to provide the statement required by this subsection is not a jurisdictional error." *See* Tex. Tax Code Ann. § 42.08(b-1) (West Supp. 2014) (amendment effective June 14, 2013 while trial court's judgment was signed March 20, 2013).

[9] The Legislature's recent amendment also gives the taxpayer the option of paying the previous year's tax liability.  *See* Tex. Tax Code Ann. § 42.08(b)(3) (West Supp. 2014).

15

before the delinquency date in compliance with subsection (b)(2). Accordingly, the trial court correctly concluded that it did not lose subject-matter jurisdiction.

Because Valero complied with the jurisdictional requirement to maintain its tax protest appeal, we reject GCAD's second jurisdictional argument. Having rejected both arguments raised in GCAD's first issue, we overrule that issue.

## II. The evidence is legally insufficient to support the jury's finding of equal and uniform value.

In its second issue, GCAD contends the evidence is legally and factually insufficient to support the jury's finding of the equal and uniform value of the challenged portions of the refinery. GCAD makes two distinct arguments: (1) Valero did not use a reasonable number of comparable properties in its equal-and-uniform analysis because the Marathon refinery is not a comparable property; and (2) the Valero experts' equal-and-uniform analysis is conclusory because they offered no explanation for excluding portions of the refineries when applying their dollars-per-EDC adjustment method.[10] We address each argument in turn.

### A. Standard of review

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen.*

---

[10] On appeal, GCAD also argues that the opinions of the Valero experts are not reliable because their methodology did not meet the statutory requirement that, in order to demonstrate an unequal appraisal, a property owner must find comparable properties and adjust the appraised values of those properties to arrive at a median appraised value. In the trial court, however, GCAD did not challenge the reliability of the Valero experts' methodology of using dollars per EDC to determine the adjusted appraised values of refineries. Because GCAD failed to preserve a reliability challenge for our review, we do not reach this argument and express no opinion on the reliability of the Valero experts' methodology, which the parties are free to address on remand. *See* Tex. R. App. P. 33.1; *Harris County Appraisal Dist. v. Kempwood Plaza Ltd.*, 186 S.W.3d 155, 161–62 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

*Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id*. at 551. This Court must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id*. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*.

This Court may sustain a legal sufficiency (or no evidence) issue only if the record reveals one of the following: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id*. Evidence that is so weak as to do no more than create a mere surmise or suspicion that the fact exists is less than a scintilla. *Id.*

A party that preserved a legal sufficiency complaint in the trial court may argue on appeal that an expert's opinion is conclusory, and as a result the evidence supporting the jury's verdict is legally insufficient. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). In that situation, we independently consider whether the evidence at trial would enable reasonable and fair-minded jurors to reach the verdict under review. *Id.* (citing *City of Keller*, 168 S.W.3d at 827). A no-evidence review encompasses the entire record, including contrary evidence tending to show the expert opinion is incompetent or unreliable. *Id.*

17

No objection to the admission of an expert's opinion is required when the expert's testimony is conclusory and lacks probative value as a result. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). This principle applies when the expert offers no basis for his opinion or the basis offered by the expert provides no support. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). The supreme court has made it clear that "a claim will not stand or fall on the mere ipse dixit of a credentialed witness." *Id.*

**B.      There is legally sufficient evidence that Marathon is a comparable property.**

GCAD initially contends that the evidence is legally insufficient to support the judgment because Valero's experts used a non-comparable property—the Marathon refinery—in their equal-and-uniform analysis.[11] We disagree.

Section 42.26(a)(3) of the Texas Tax Code provides that a district court shall grant relief on the ground that a property is appraised unequally if "the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." Tex. Tax Code Ann. § 42.26(a)(3). In GCAD's view, Valero failed to introduce legally sufficient evidence that the Marathon refinery is a comparable property, and its exclusion from the analysis leaves Valero without a reasonable number of comparable properties as required by the statute.

Neither party cites authority addressing how we are to review GCAD's challenge. Many courts analyze arguments that a property is not comparable as

---

[11] Although we ultimately agree with GCAD's second legal sufficiency argument and hold that it entitles GCAD to a new trial (see Part II.C. below), we address this first argument because GCAD contends it would support the greater relief of judgment in GCAD's favor and because it is likely to arise again on remand. *See Garza v. Cantu*, 431 S.W.3d 96, 107 n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

18

challenges to the admission of evidence regarding the property's value or to the reliability of expert testimony based on that value, holding that trial courts have considerable discretion in making the fact-intensive determination whether properties are similar enough to admit the evidence, and that the degree of comparability goes to the weight of the evidence.[12] These holdings have particular force in this context because a very demanding threshold standard of comparability could prevent owners of complex industrial properties from bringing an equal-and-uniform challenge at all—a result at odds with the broad construction we are to give section 42.26 as a remedial statute.[13] Moreover, GCAD did not ask the trial court to make a comparability determination by objecting to the admission of evidence regarding the Marathon refinery or to the reliability of the expert testimony offered by Valero.

Even if GCAD could nevertheless raise a separate challenge to the legal sufficiency of the evidence regarding Marathon's comparability, we conclude that such a challenge fails because there is more than a scintilla of evidence that the Valero and Marathon refineries are sufficiently comparable. In support of its position, GCAD points to evidence that Marathon's refinery has a much smaller refining capacity and lacks a coker unit as well as other processing units that both Valero and BP possess. Undisputed evidence also showed, however, that no two

---

[12] *E.g.*, *Harris County Appraisal Dist. v. Houston 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 256 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Collin County v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 872 (Tex. App.—Dallas 2012, pet. denied); *City of Dallas v. Anderson*, 570 S.W.2d 62, 66–67 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.); *Stewart v. State*, 453 S.W.2d 524, 526–27 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.).

[13] *Harris County Appraisal Dist. v. United Investors Realty Trust*, 47 S.W.3d 648, 652 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (stating that remedial statutes, such as section 42.26 of the Tax Code, should not be given a construction that would defeat the purpose for which they were enacted by the Legislature); *see also Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) (noting cardinal rule of statutory construction that the Legislature is never presumed to do a useless or meaningless act).

refineries are alike, yet the three Galveston County refineries share many characteristics. These characteristics include: (1) each sits on land; (2) each processes crude oil and produces fuel oils and other petrochemical products; (3) each has storage facilities for crude oil, feed stocks used in the refining process, and finished products prior to sale; (4) each has access to utilities, pipelines, and port facilities; (5) each has pollution control equipment; and (6) each has support facilities within the refinery grounds such as warehouses for spare parts and other repair/maintenance supplies, functioning maintenance shops and laboratories, administration buildings, and personal property suitable for a functioning complex industrial operation. In addition, there was conflicting testimony from GCAD's and Valero's experts regarding whether the refineries are comparable and whether appropriate adjustments could be made to determine a median value.

Having reviewed the record, we conclude there is more than a scintilla of evidence that the three refineries are comparable for purposes of an equal-and-uniform challenge and the differences pointed out by GCAD can be accounted for through a properly conducted adjustment process. *See Harris County Appraisal Dist. v. United Investors Realty Trust*, 47 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (stating only independent analysis required in equal-and-uniform challenge is adjusting appraised values to put properties on equal footing). We therefore overrule GCAD's first legal sufficiency argument.[14]

---

[14] Because we ultimately conclude that the evidence is legally insufficient to support the judgment given that Valero's experts offered no basis for removing the pollution control equipment from the equal-and-uniform analysis, we need not reach GCAD's contention that the evidence is factually insufficient to establish that the Marathon refinery is a comparable property. *See* Tex. R. App. P. 47.1.

20

**C.    There is no evidence to support the jury's value finding because Valero's experts offered no basis for including some parts of the refineries in their valuation analysis while excluding others.**

Next, GCAD argues the evidence is legally insufficient to support the jury's finding that the equal and uniform value of the challenged portions of the Valero refinery was $337,415,593 because Valero's experts did not sufficiently explain the basis for their calculations supporting that value, rendering their opinions conclusory. In particular, GCAD points out that in applying their chosen adjustment method of dollars per EDC, Valero's experts provided no basis for their decision to include the appraised dollar value of the three refineries' non-process facilities in the analysis while excluding the value of their pollution control equipment—a decision that offered Valero an additional reduction of over $130 million in the appraised value of the challenged portions of the refinery. Because we agree that Valero's experts offered no reason for removing the pollution control equipment from the equal-and-uniform analysis other than that Valero had told them to do so, we hold that the jury's finding is not supported by legally sufficient evidence. *See Pollock*, 284 S.W.3d at 818.

To explain the basis for our conclusion, we begin by reviewing the portions of the refineries at issue and the experts' analysis of their equal and uniform value. Valero's appeal of the ARB's orders challenged the appraised value of property listed in five specific account numbers: (1) R293410 for process units and various support facilities (appraised value $520,791,990); (2) R293411 for port tank facilities (appraised value $2,125,000); (3) R422670 for crude oil tank facilities (appraised value $3,880,000); (4) R364374 for pollution control equipment (appraised value $233,718,730); and (5) P234000 for personal property and inventory (appraised value $2,934,000). The total appraised value of these five accounts was $763,449,720.

21

On the first day of trial, the court granted Valero leave to file an amended petition dropping its valuation challenge to two of the accounts: pollution control equipment and personal property and inventory.[15] Nevertheless, Valero's experts prepared two equal-and-uniform analyses of the appraised value of the three refineries, one that included and another that excluded the appraised value of each refinery's pollution control equipment. With the pollution control equipment included in the analysis, the ARB's 2011 appraised value of the Valero refinery was $760,515,720. When the pollution control equipment was removed, the appraised value was $526,796,990, a reduction of $233,718,730.

This reduction had a substantial effect on the experts' calculation of dollars of appraised value per EDC—the method they used to make the adjustments necessary to determine a median appraised value. As explained above, EDC measures the capacity and complexity of a refinery's process units (which, in Valero's case, were appraised in account R293410). Valero's experts added together the appraised dollar values of certain property accounts within each refinery and divided that total value by the refinery's EDC to determine a dollars-per-EDC value, which they then compared across refineries to arrive at a median value. This median value was $231 per EDC when the experts included the appraised value of each refinery's pollution control equipment as well as its process units and facilities accounts, but $115 per EDC when pollution control equipment was excluded. As a result, Valero's experts opined that the equal and uniform value of the three property accounts still being challenged by Valero—the

<hr>

[15] Although GCAD disputed the dropping of the pollution control equipment account from the lawsuit, it did not challenge in the trial court, and has not challenged on appeal, the dropping of account P234000 from the lawsuit. None of the experts included account P234000 in their equal-and-uniform comparisons. We therefore do not address the appropriateness of the experts' decisions to exclude the account from their valuation opinions. *See Kempwood Plaza Ltd.*, 186 S.W.3d at 161.

process units and other facilities—was $469,714,996 when the pollution control equipment was included in the comparative analysis, but $337,415,593 when it was excluded. The jury chose the lower figure.

The experts did not explain, however, how their chosen adjustment method of dollars per EDC supported excluding the pollution control equipment from the equal-and-uniform analysis. Undisputed evidence showed that: (1) all three refineries had pollution control equipment with appraised values of many millions of dollars; (2) pollution control equipment is required to produce product that can be sold in the United States; (3) pollution control equipment contributes to the value of each refinery; and (4) pollution control equipment would be included in the sale if a refinery is sold. Faced with this evidence that pollution control equipment is an essential part of each refinery, Valero's experts were required to explain why the value of the pollution control equipment should or should not have been included in their equal-and-uniform analysis. The experts' exclusion of the equipment with no explanation of their basis for doing so—other than that Valero told them to—renders their opinions conclusory and unable to support the judgment. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 830, 835–38 (Tex. 2014) (holding expert's testimony constituted legally insufficient evidence because she failed to explain whether or why properties she used for comparison were similar to subject property, identify other plausible causes for differences between properties' market values, or tie her valuation to differences between properties); *Pollock*, 284 S.W.3d at 818 (holding that if expert provides no basis for his opinion or stated basis for the opinion is conclusory, it is not probative evidence even if there was no objection).[16]

---

[16] *Cf. Houston 8th Wonder Property L.P.*, 395 S.W.3d at 255–56 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding (1) trial court did not abuse its discretion in admitting expert's opinion on equal and uniform valuation because expert offered adequate explanation for

23

In this Court, Valero suggests that its decision to narrow its appeal in the trial court and forgo a challenge to the ARB's value of the separately-appraised pollution control equipment provided a basis for its experts to exclude that value from their analysis. We disagree because it is the refinery comparison method chosen by Valero's experts that determines which parts of each refinery must be included to produce a reliable calculation of median dollars per EDC, and there is no evidence from the experts suggesting that Valero's pleading decision affects the median calculation. When the value of part of a larger property is in dispute, many valuation methods consider the larger property in valuing the disputed portion. *See, e.g., State v. Windham*, 837 S.W.2d 73, 76 (Tex. 1992) (holding that when parcel condemned is part of larger economic unit of property, value of parcel must be calculated with reference to remainder of property, and rejecting argument that condemnee has absolute right to designate economic unit). Here, Valero's experts did not address whether dollars per EDC is such a method. Nor can we discern any basis in the record for concluding that the experts' method provides a basis for excluding pollution control equipment. We note that EDC is calculated based on the refinery's process units, and pollution control equipment is not a process unit. But the other tank facilities are likewise not process units, yet the experts included their value in the analysis. Accordingly, we conclude that neither Valero's amended petition nor the experts' chosen method provides a basis for excluding the value of Valero's pollution control equipment from the equal-and-uniform analysis.

Valero also asserts that the equipment was properly excluded because each refinery's pollution control equipment differs from the equipment found in the other two refineries. We conclude that alleged differences in the type and

decisions made on adjustments to values of comparable properties, and (2) evidence was legally sufficient to support the judgment as a result).

24

allocation of the pollution control equipment at each refinery do not provide a basis to exclude pollution control equipment from the equal-and-uniform analysis, however, because any differences that may exist can be addressed through the adjustment process. *United Investors Realty Trust*, 47 S.W.3d at 653. Moreover, the allegation that the appraised value of the pollution control equipment at one or more refineries may not match its market value is (if true) a ground for an excessive-appraisal challenge, not an unequal-appraisal challenge. *Compare* Tex. Tax Code Ann. § 42.25 *with id.* § 42.26.

Finally, Valero points out that it was undisputed at trial that some portion of each refinery's pollution control equipment is ultimately exempt from taxation. We conclude that this exemption likewise provides no basis for excluding pollution control equipment from the equal-and-uniform analysis. GCAD is charged with determining the appraised value of property in its district, and it is the appraised value—not the taxable value—that Valero has challenged as unequal.[17]

Because we have determined that Valero's experts offered no basis for excluding an integral part of each refinery from their equal and uniform valuation, we conclude the evidence is legally insufficient to support the jury's determination

---

[17] *See* Tex. Tax Code Ann. §§ 1.04 (8), (9), (10), (14) (defining "appraised value," "assessed value," "taxable value," and "assessor"), 6.01 (establishing appraisal district in each county and assigning it duty to appraise property in district for ad valorem tax purposes), 26.01 (requiring chief appraiser to prepare and certify appraisal roll for all property taxable in district), 31.01 (requiring tax assessor to state in each tax bill the appraised value, assessed value, and taxable value of the property), 42.26(a)(3) (authorizing district court to grant relief to property owner "on the ground that a property is appraised unequally" under certain circumstances) (West 2008); *see also Benson Chevrolet, Inc. v. Bexar County Appraisal Dist.*, 242 S.W.3d 54, 56 (Tex. App.—San Antonio 2007, no pet.) ("If no protest or challenge is filed by the property owner regarding the appraised value established by the appraisal district, the appraisal district certifies the value to the tax assessor-collector and the tax assessor-collector issues tax statements and collects taxes."); *General Motors Acceptance Corp. v. Harris County Appraisal Dist.*, 899 S.W.2d 821, 823 (Tex. App.—Houston [14th Dist.] 1995, no writ) (stating that appraisal district lists property and its appraised market value).

that the 2011 equal and uniform value of the Valero refinery was $337,415,593. We therefore sustain GCAD's second issue on appeal.

Normally, we reverse and render judgment in favor of the appellant when we sustain a legal sufficiency point. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007). We conclude that is not the appropriate outcome here because there is some evidence in the record that would support an equal and uniform valuation of the challenged portions of the Valero refinery that is lower than the valuation ordered by the ARB. In this situation, we may either remand the case to the trial court for a new trial or suggest a remittitur. *Garza v. Cantu*, 431 S.W.3d 96, 108 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Guevara*, 247 S.W.3d at 670). Here, Valero's experts performed a separate equal-and-uniform calculation that included each refinery's pollution control equipment account. They did not, however, include all accounts associated with each refinery in that calculation, nor did they explain why it was acceptable under a dollars-per-EDC method to include certain accounts and exclude others. We conclude, therefore, that the record contains insufficient evidence to calculate an accurate remittitur. Accordingly, we reverse the trial court's judgment and remand this case to the trial court for a new trial. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (holding improperly segregated awards of damages or fees are some evidence of what the segregated awards should be and therefore require a remand). Because the disputes in the initial trial included both whether the property was unequally appraised and, if so, its equal and uniform value, a new trial on both issues is necessary. *See* Tex. R. App. P. 44.1(b); *Garza*, 431 S.W.3d at 108.

**III.    The award of attorneys' fees to Valero must also be reversed and remanded for a new trial.**

In its third issue, GCAD challenges the trial court's award of attorneys' fees to Valero.  Valero sought, and the trial court awarded, attorneys' fees pursuant to section 42.29 of the Texas Tax Code.  This section provides that a property owner who prevails in a tax appeal on unequal appraisal grounds may be awarded reasonable attorneys' fees.  *See* Tex. Tax Code Ann. § 42.29 (West 2008). Because we have reversed the unequal appraisal judgment in favor of Valero, Valero is no longer a prevailing party at this stage of the proceedings.  We therefore sustain GCAD's third issue, reverse the judgment's award of attorneys' fees, and remand that matter to the trial court as well.  *See Bluelinx Corp. v. Texas Const. Sys., Inc.*, 363 S.W.3d 623, 630 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

CONCLUSION

Having sustained GCAD's second and third issues on appeal, we reverse the judgment of the trial court and remand this case to the trial court for a new trial.


/s/    J. Brett Busby
Justice

Panel consists of Justices Boyce, Busby, and Wise.