**VALERO REFINING–TEXAS, L.P., Petitioner,**

v.

**GALVESTON CENTRAL APPRAISAL DISTRICT, Respondent**

NO. 15–0492

Supreme Court of Texas.

Argued November 9, 2016

Opinion delivered: February 24, 2017

April L. Farris, Office of the Attorney General, David Michael Hugin, Melissa E. Ramirez, Ramirez Hugin, PLLC, Austin TX, Christian J. Ward, Reagan W. Simpson, Yetter Coleman LLP, Houston TX, for Petitioner.

Andrew J. Mytelka, J. Scott Andrews, Joseph Cavanah, Michael G. Adams, Greer Herz & Adams LLP, Galveston TX, Angela Olalde, Greer Herz & Adams, LLP, League City TX, for Respondent.

Chief Justice Hecht delivered the opinion of the Court.

■ The Texas Constitution guarantees that "[t]axation shall be equal and uniform."[1] By statute, "a property is appraised unequally if [its] appraised value ... exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted."[2] In appraising real property, an appraisal district may choose to divide a single tract into multiple accounts for various reasons, such as the complexity of improvements. The issue before us is whether an owner's complaint of unequal taxation may be directed to only some of those accounts and not the valuation of the whole tract. The court of appeals concluded that the issue is one of fact.[3] We hold, as a matter of law, that appraisals of individual accounts may be challenged as unequal. We reverse the judgment of the court of appeals and remand the case to that court for further proceedings.

## I

An oil refinery is typically a sprawling, complex facility with many different components. Processing units of varying types convert crude oil into different petroleum products including gasoline, diesel, kerosene, lubricating oil, liquified petroleum gas, asphalt, and petroleum coke. Tanks store crude and product inventories. Support buildings house operations and administration. The plant incorporates pollution control equipment required by the State. The facility contains personal property, including inventories, furniture, fixtures, equipment, and supplies. There are intangible assets. And the whole thing sits on land.

Some refineries are more complex than others and can extract more products from crude. A "heavy-conversion" or "deep-conversion" refinery can operate on heavier

---

1. Tex. Const. art. VIII, § 1(a).

2. Tex. Tax Code § 42.26(a)(3).

3. 463 S.W.3d 177, 190 (Tex. App.–Houston [14th Dist.] 2015).

and more sour crude oil and uses a coker unit that leaves nothing of the crude but petroleum coke, a carbon powder that can be burned or used to make anodes for use in aluminum smelting. A "medium-conversion" refinery uses lighter crude oil and extracts fewer products. A well-recognized metric of refinery complexity is the Nelson Complexity Index,[4] published annually in the *Oil and Gas Journal*, a widely read petroleum industry weekly publication with worldwide coverage.[5] Refineries also have different production capacities depending on their size.

Galveston County has three oil refineries, all in Texas City. Petitioner Valero Refining–Texas L.P. ("Valero") and BP Products (NA), Inc. ("BP") both own heavy-conversion refineries, and Marathon Petroleum Co. ("Marathon") owns a medium-conversion refinery. BP's refinery is the largest and most complex, while Marathon's is the smallest and least complex. Marathon's refinery, unlike the other two, cannot remove sulfur from its products. Because of this, Marathon sends its finished products to other refineries for further treatment before sale in the United States.

In other respects, the three facilities are typical of refineries generally. Each sits on land, processes crude oil to produce petrochemical products, and has storage facilities and access to utilities. Each also has support facilities such as warehouses and administration buildings. And each has pol-lution control equipment ("PCE"). PCE is not part of the refining process but is required to operate the refinery, and its value would be included in determining the refinery's market value. PCE is largely, but not entirely, tax-exempt.

▮ Generally, a tract of land and its improvements are appraised together and assigned a single value. But appraisal districts are permitted to divide a tract and its improvements into separate components, each with its own tax account number, and appraise them individually. A district is required to give the owner "notice of what property was included in each tax account (and thus some assurance that it was not included twice)".[6] For 2011, respondent Galveston Central Appraisal District ("the District") appraised the Valero, BP, and Marathon refineries using separate tax accounts. It is unclear from the record how many accounts the District used.

Valero protested some, but not all,[7] of the account appraisals to the Galveston County Appraisal Review Board, claiming that the appraised values exceeded market values and were not equal and uniform compared to BP's and Marathon's appraised values. In separate orders for each account, the Board reduced the values of several accounts and rejected Valero's claims of inequality. Valero appealed to the district court from the Board's orders on only five of its accounts—three relating to

---

4. The Index was developed by W. L. Nelson in the 1960s to quantify the relative cost of components that make up a refinery. It provides a relative measure of the construction costs of a particular refinery based on its crude and upgrading capacity. *See* Daniel Johnson, *Refining Report Complexity Index indicates refinery capability, value*, OIL & GAS JOURNAL (Mar. 18, 1996), http://www.ogj.com/articles/print/volume-94/issue-12/in-this-issue/general-interest/refining-report-complexity-index-indicates-refinery-capability-value.html.

5. OIL & GAS JOURNAL, http://www.ogj.com/index/about-us.html.

6. *Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 335 (Tex. 2005).

7. It is not clear from the record which accounts Valero included in its initial protest.

processing operations, one for PCE, and one for personal property and inventory. Valero initially asserted both of the claims it made before the Board but eventually dropped its market value claim. On the first day of trial, Valero requested leave to amend its pleadings to drop its claim relating to the two accounts for PCE and personal property and inventory, narrowing the dispute to the three accounts related to processing operations. The District did not object to the amendment in substance but argued that an equal-and-uniform challenge can be determined only if made to the appraised value of the entire tract, not just to some of the component tax accounts, and moved to dismiss for want of jurisdiction. The trial court rejected the District's argument, denied its motion, and proceeded to trial.

Valero contends that for determining unequal taxation, the two other Galveston County refineries are "a reasonable number of comparable properties" under section 42.26(a)(3) of the Tax Code.[8] According to Valero's trial experts, the three refineries' respective capacities and Nelson Complexity indices are:

| | BP | Valero | Marathon |
| --- | --- | --- | --- |
| Capacity[9] | 475,000 | 257,895 | 80,000 |
| Complexity | 15.0 | 11.4 | 8.6 |

The District's expert testified that these differences are so great that the three refineries are not comparable, and that three properties are not enough to determine whether Valero's appraisals were equal and uniform.

But if comparison is to be made, all the experts agreed that values for the refineries must be adjusted for differences in capacity and complexity by calculating Equivalent Distillation Capacity ("EDC"), which is the product of the two figures.

The experts calculated values per EDC, found the mean between BP's and Marathon's, and used it to calculate Valero's adjusted account appraisals. The experts also made these calculations both including and excluding the refineries' PCE accounts, although Valero had dropped its challenge to that account.

Including or excluding the refineries' PCE accounts greatly impacts the comparative values of the three refineries. The experts' testimony is summarized as follows:

8. TEX. TAX CODE § 42.26(a)(3).

9. Capacity is measured in "barrels of crude per stream day", which the United States Energy Information Administration defines as "[t]he maximum number of barrels of input that a distillation facility can process within a 24–hour period when running at full capacity under optimal crude and product slate conditions with no allowance for downtime." *See* U.S. ENERGY INFORMATION ADMINISTRATION, *Glossary*, www.eia.gov/tools/glossary/index.cfm?id=B.

| | BP | Marathon | Valero |
|---|---|---|---|
| **District account appraisals** | | | |
| Process Units[10] | 1,041,583,980 | 57,050,210 | 520,791,990 |
| Other Facilities[11] | 2,590,610 | -- | 2,125,000 |
| Other Facilities[12] | 84,320 | -- | 3,880,000 |
| **Subtotal** | 1,044,258,910 | 57,050,210 | 526,796,990 |
| PCE | 430,938,020 | 117,434,430 | 233,718,730 |
| **Total** | 1,475,196,930 | 174,484,640 | 760,515,720 |
| PCE as percent of total | 29% | 67% | 31% |
| **EDC** | 7,140,883 | 685,267 | 2,940,579 |
| **Excluding PCE** | | | |
| Appraisal per EDC | 146 | 83 | 179 |
| Median BP & Marathon | 115 | | |
| Adjusted value | | | 338,166,585[13] |
| Excess | | | 189,415,533 |
| Percent over-appraised | | | 36% |
| **Including PCE** | | | |
| Appraisal per EDC | 207 | 255 | 259 |
| Median BP & Marathon | 231 | | |
| Adjusted value | | | 678,108,731 |
| Adj. PCE value | | | 208,393,735 |
| Adj. value minus adj. PCE | | | 469,714,996 |
| Excess | | | 57,081,994 |
| Percent over-appraised | | | 11% |

With PCE excluded, the BP refinery's value-per-EDC is higher than Marathon's as might be expected, but including PCE, their positions reverse. This is in part because for BP, PCE is only 29% of the total appraisal for all four accounts, but for Marathon, it is 67%. Valero suggests that this discrepancy is due to the District's careless appraisals of the largely tax-exempt PCE. Valero presented evidence at trial indicating that replacement cost, economic life, and depreciation had not been considered in calculating the value of the PCE. Including PCE, the adjusted appraised value of the three accounts Valero challenges is about $470 million, only about $57 million, or 11%, above the median. Excluding PCE, the adjusted appraised value of the three accounts is only about $337 million, more than $189 million, or 36%, above the median.

Valero argued the greater over-appraisal to the jury, justifying the exclusion of PCE from the calculations on the ground that it was no longer including its PCE account in its unequal appraisal claim. The District argued that the only reason to exclude PCE was to overstate the alleged inequality. The jury found that the property had been appraised unequally by the amount calculated by Valero's experts excluding PCE.[14] The trial court rendered judgment on the verdict, awarding Valero attorney fees.[15] Valero's resulting property tax refund was approximately $5 million.

The District appealed, arguing that the trial court lacked jurisdiction to determine an unequal appraisal challenge to anything but an entire tract, and that the evidence was factually and legally insufficient to support the jury's findings.[16] More specifically, the District argued that there is insufficient evidence that the Marathon refinery is comparable to Valero's and BP's for determining unequal taxation, and that the PCE accounts should be excluded in making that determination. The court of appeals rejected the jurisdiction argument[17] and held that there was some evidence the three refineries are comparable.[18] But the court agreed with the District that there was no evidence to sup-

14. The jury was instructed that unequally appraised means "the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted."

15. See Tex. Tax Code § 42.29 (permitting award of fees to a party who prevails under section 42.26).

16. 463 S.W.3d 177, 180 (Tex. App.–Houston [14th Dist.] 2015). The District also argued that: Valero's late amendment constituted a surprise; the evidence that Marathon is a comparable property is factually insufficient; Valero failed to offer legally and factually sufficient evidence of a median appraised value of a reasonable number of comparable properties; Valero's evidence on attorney fees was inadmissible; and evidence of the award of attorney's fees was factually and legally insufficient. The court of appeals did not address these arguments.

17. Id. at 184–187.

18. Id. at 190.

port the verdict.[19] The court treated the question whether to exclude the PCE account from the value calculations as one of fact and held that, because PCE is an essential part of a refinery, Valero's experts were required to explain the exclusion.[20] The absence of an explanation left the experts' opinions conclusory and therefore no evidence of value.[21] But because there was some evidence of an unequal appraisal, the court concluded that judgment should not be rendered for the District but that the case should be remanded for a new trial.[22] The court reversed Valero's award of attorney fees.[23]

We granted the District's and Valero's petitions for review.[24] The District maintains that the trial court lacked jurisdiction over Valero's complaint of only three accounts' valuation, and that there is no evidence Marathon's refinery is comparable to BP's and Valero's. Valero argues that it could exclude PCE from its valuation calculations as a matter of law, and the court of appeals erred in treating the issue as one of fact. The District also argues that there was no evidence that the Marathon refinery is a comparable property. We address each of these three arguments in turn.

## II

The Tax Code prescribes the process for obtaining judicial review of a property appraisal. The dissatisfied owner must first protest before the local appraisal review board.[25] The owner may protest the "determination of the appraised value of the owner's property" and an "unequal appraisal of the owner's property".[26] The board must "determine the protest and make its decision by written order." [27] The owner "is entitled to appeal ... an order of the appraisal review board determining ... a protest by the property owner".[28] "The court has jurisdiction over an appeal ... so long as the property was the subject of an appraisal review board order, the petition was filed within [60 days after the party received notice of the order], and the petition provides sufficient information to identify the property that is the subject of the petition." [29]

■ Here, the parties do not dispute that: the District appraised Valero's refinery in separate tax accounts; Valero filed separate protests of each of some but not all of the account appraisals (not the land, for example); the appraisal review board decided the protests by separate orders for each account; Valero timely appealed those orders; and its petition sufficiently identified the property covered by the tax accounts. But the District argues that the "property" referred to in the statutory provisions authorizing appeal is not the property in the separate tax accounts but the entire refinery. The sole authority the District cites for its argument is *Covert v.*

19. *Id.* at 190–193. Accordingly, the court did not address the District's arguments that the evidence was factually insufficient to support the verdict. *Id.* at 190 n.14.

20. *Id.* at 191–192.

21. *Id.* at 192.

22. *Id.* at 193.

23. *Id.* at 194.

24. 59 Tex. Sup. Ct. J. 1593 (Sept. 2, 2016).

25. Tex. Tax Code § 41.41(a).

26. *Id.* § 41.41(a)(1–2).

27. *Id.* § 41.47(a).

28. *Id.* § 42.01(a)(1)(A).

29. *Id.* § 42.21(h).

*Williamson Central Appraisal District.*[30] In *Covert*, the court of appeals held that an owner of improved property appraised as a single tax account may not challenge only the appraisal of the land apart from the improvements.[31] *Covert* says nothing about challenges to some of the appraisal accounts of improved property without challenging all of them.

Valero's petition for judicial review fully complied with all of the statutory requirements. Nothing in the applicable statutory provisions requires a taxpayer to challenge all the appraisal accounts used to appraise its property. On the contrary, the Tax Code defines "property" as "any matter or thing capable of private ownership."[32] Each part of Valero's refinery covered by a tax account is property within the meaning of the Code. Accordingly, the district court had jurisdiction of Valero's appeal.

## III

As we noted at the outset, the Tax Code provides that "a property is appraised unequally if [its] appraised value ... exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted."[33] The statutory acknowledgment that properties may need to be "appropriately adjusted" shows that "comparable" does not mean "identical." The Tax Code only requires that the selection of comparable properties be based on generally accepted methods.[34]

 The District argues that no two refineries are really the same, and that some, but not all, are comparable. While it is certainly true that every piece of real estate is unique,[35] and the same is no doubt true of complex properties like oil refineries, that uniqueness does not preclude similar properties from being compared. The District's view of comparability would deny refinery owners a claim that their constitutional right to fair and equal taxation had been denied. The District also argues, less broadly, that there is no evidence in this record that the Marathon refinery, with much less capacity and complexity than Valero's and BP's refineries, is comparable to them. But Valero presented evidence that the three refineries each had the same business functions (processing crude oil), similar storage facilities, equal access to utilities, and on-site support facilities (though, as the District points out, Valero omitted from its analysis two common factors—land, which all refineries have in common, and PCE). The District's use of similar accounts and appraisal methods itself shows a measure of comparability. This was some evidence to support the jury's finding that Marathon was a comparable facility for the purpose of an equal-and-uniform challenge.

## IV

 Different aspects of real property may be appraised and taxed separately even though all are part of the same sur-

**30.** 241 S.W.3d 655 (Tex. App.–Austin 2007, pet. denied).

**31.** *Id.* at 656, 661 ("[h]olding that the trial court did not err because the statute requires a taxpayer to challenge the appraised valuation of the entire improved property and not merely its component values," and "that a taxpayer challenging the equal and uniform assessment of an improved property under

section 42.26 must allege that the overall appraised value of the property is unequal").

**32.** Tex. Tax Code § 1.04(1).

**33.** *Id.* § 42.26(a)(3).

**34.** *Id.* § 23.01(f).

**35.** *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 209 (Tex. 2002).

face tract.[36] An appraisal district has some discretion in determining the best appraisal method for a complex property.[37] When a district chooses to use separate tax accounts for a single tract, it must give notice of what property is included in each tax account so that the property owner is protected against double taxation.[38]

■ The District argues that in determining whether Valero's property has been taxed unequally as compared to BP's and Marathon's, only the total valuations can be compared and not their component accounts. In essence, the District's argument is that the value of property in one tax account is affected by the value of property in other accounts—that is, that the components of the refineries cannot be appraised separately. This is contradicted by the District's own determination that they can be. The District does not argue that it was wrong to use separate accounts in appraising the refineries but minimizes its decision as one of administrative convenience. The District's argument that appraisals of some accounts cannot be compared separately from appraisals of others violates the requirement that a property owner have notice of what is included in each account to be assured that property is not being double-taxed. If the component parts of a property cannot be valued in isolation, then as a matter of law, separate tax accounts are not appropriate. It follows that if tax accounts are appropriate, then as a matter of law, the property in each

account can be valued in isolation. This is transposition logic, not a factual dispute.[39]

■ The District argues that PCE must be included in comparing the values of the processing units and tanks because PCE is an integral part of a refinery, without which it cannot operate. But if PCE can be appraised separately, and no one disputes that it can be, then the other account appraisals can be compared without regard to the PCE appraisals, just as, for example, the appraisals or tanks or land could be compared separately. The District argues that appraised PCE values substantially impact the equalized value calculations. They obviously do, but that is no more reason to include them in the comparison than to exclude them. The reason for the disparity, according to Valero's experts, is that the District is not careful in appraising PCE, perhaps because much of it is tax-exempt. The District has not offered an explanation. Whatever the reason, the influence of PCE values on the equalized value calculations is not sufficient reason to require that they be included. While the District complains that Valero has excluded PCE values to obtain a more favorable result, one would expect a party to do exactly that. If Valero's calculations are permitted, as we have concluded they are, then it matters not that they are also beneficial to its position.

■ The District argues that the refineries' values cannot be adjusted, as they must be for comparison, using the EDC metric because it only measures what re-

---

**36.** *Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners, L.P.,* 165 S.W.3d 329, 332 (Tex. 2005).

**37.** *See id.* at 335. *See also* Tex. Att'y Gen. Op. No. GA–0790 (2010) (suggesting that the chief appraiser has administrative discretion over whether to organize land and improvements into separate tax accounts, citing Tex. Tax Code § 25.02).

**38.** *Matagorda Cty. Appraisal Dist.,* 165 S.W.3d at 335.

**39.** The parties tell us that the District has since ceased appraising the refineries using separate accounts. We intimate no view, of course, on the change.

finery process units take in and yield and does not apply to buildings or tanks. The District also complains that Valero's experts determined the median EDC between BP and Marathon, which is not the test under section 42.26 of the Tax Code, and did not determine the median value between BP and Marathon, which is.[40] But even the District's experts agreed the EDC was a useful factor in adjusting the values for comparison. Finally, the District argues that its expert testified that because Valero's refinery is about half the size of BP's, its value should also be roughly half, as it has been appraised for years, rather than 37%, the result of Valero's calculations. The short answer to the argument is that the jury rejected it.

Having determined that Valero's, BP's, and Marathon's refineries can best be appraised using different accounts for separate components, it cannot, as a matter of law, argue that the values cannot be compared for determining whether Valero's constitutional right to equal and uniform taxation has been violated.

\* \* \* \* \*

Accordingly, we reverse the judgment of the court of appeals. The District has raised other issues on appeal, including the factual sufficiency of the evidence to support the verdict, which must be determined by the court of appeals; hence, we remand the case to that court. If Valero prevails, then, of course, it would be entitled to recover its attorney fees.[41]

*So ordered.*