**TRIYAR COMPANIES, LLC, Triyar Companies, Inc. f/k/a Triyar Companies, LLC, SJM Realty, Ltd., and GPM Houston Properties, Ltd., Appellants**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Appellee**

NO. 14–14–00160–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 9, 2017.

Brendan K. McBride, San Antonio, TX, Reagan W. Simpson, Houston, TX, for Appellant.

Christopher W. Martin, David D. Disiere, Kevin H. Dubose, Houston, TX, Robert M. Hoffman, Dallas, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Boyce and Wise.

## OPINION

Kem Thompson Frost, Chief Justice

This appeal arises out of a dispute between an insurer and claimants under a commercial insurance policy for hurricane damages to two malls. On the insurer's motion the trial court disregarded jury findings favorable to the plaintiffs based on the jury's failure to find that the insurer breached the policy, and the trial court rendered judgment that the plaintiffs take nothing. Presuming for the sake of argument that the trial court erred in granting the insurer's motion, we conclude that a take-nothing judgment against the plaintiffs is proper based on one of the insurer's cross-points, and we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/defendant Fireman's Fund Insurance Company issued an insurance policy with a single named insured, appellant/plaintiff Triyar Companies, LLC (hereinafter the "Policy"). The Policy provided various coverages, including proper-

ty coverages pertaining to locations in Texas, Arizona, California, and Indiana. The Policy provided coverage for direct physical loss or damage to certain property occurring during the Policy term and resulting from all risks except as excluded or limited in the Policy. This coverage applied to property at Greenspoint Mall in Houston, Texas, and San Jacinto Mall in Baytown, Texas.

Under the Policy, Fireman's Fund determines the value of the lost or damaged property at "Replacement Cost," as of the time of the loss or damage, except that (1) the insured may make a claim for loss or damage covered by the Policy on an Actual Cash Value basis; and (2) Fireman's Fund will not pay on a Replacement Cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced, and the repairs and replacement must be made as soon as reasonably possible after the loss or damage. The Policy defines "Replacement Cost" as "the cost to replace with new property of comparable material and quality and used for the same purpose without deduction for depreciation."

The Policy also provides, under certain circumstances, for determination of the value of the lost or damaged property at "Actual Cash Value" at the time of the loss or damage. Actual Cash Value is calculated as the amount it would cost to repair or replace the covered property, at the time of the loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation, and obsolescence. The insured does not have to have actually repaired or replaced the lost or damaged property to obtain payment under the Policy based on Actual Cash Value.

During the Policy period, Hurricane Ike caused direct physical loss or damage to the covered property at Greenspoint Mall and San Jacinto Mall. Triyar Companies, LLC ("Triyar LLC"), the only Named Insured under the Policy, did not own any property at Greenspoint Mall or San Jacinto Mall. Instead, appellant/plaintiff GPM Houston Properties, Ltd. ("GPM") owns Greenspoint Mall, and appellant/plaintiff SJM Realty, Ltd. ("SJM") owns San Jacinto Mall. Triyar LLC made claims under the Policy, seeking to recover the value of the lost or damaged property at "Replacement Cost." Fireman's Fund concluded that payment on a Replacement Cost basis was not appropriate because the lost or damaged property had not been actually repaired or replaced. Instead, Fireman's Fund paid on the claims based on Actual Cash Value. As to Greenspoint Mall, Fireman's Fund paid $262,483, and the applicable deductible was $1,964,673.[1] As to San Jacinto Mall, Fireman's Fund paid $3,814,273, and the applicable deductible was $2,062,147.[2]

Appellants/plaintiffs Triyar LLC, Triyar Companies, Inc. f/k/a Triyar Companies, LLC, GPM, and SJM (collectively, the "Triyar Parties") took the position that Fireman's Fund had underpaid the claims,

1. The statement-of-facts section of the appellants' brief contains these propositions, and Fireman's Fund has not contradicted them. Therefore, we accept these statements as true. *See* Tex. R. App. P. 38.1(g) (stating that "[i]n a civil case, the court will accept as true the facts stated unless another party contradicts them"); *Johnson v. Office of Attorney General of Texas*, No. 14–11–00842–CV, 2013 WL 151622, at *1 (Tex. App.–Houston [14th Dist.] Jan. 15, 2013, no pet.) (mem. op.). In any event these statements are not disputed by the parties.

2. Because the statement-of-facts section of the appellants' brief contains these propositions, and Fireman's Fund has not contradicted them, we accept these statements as true. *See* Tex. R. App. P. 38.1(g); *Johnson*, 2013 WL 151622, at *1. In any event these statements are not disputed by the parties.

and they asserted claims in the trial court against Fireman's Fund, including claims for breach of the Policy, breach of an insurer's common-law duty of good faith and fair dealing, claims for violations of the Prompt Payment of Claims Act under Chapter 542 of the Insurance Code, and claims under Insurance Code section 541.151 based on Fireman's Fund's alleged violation of Insurance Code section 541.060(a)(2)(A).

Fireman's Fund asserted a counterclaim against Triyar LLC and a purported cross-action against various entities who had not been made parties to the litigation. Fireman's Fund sought various forms of relief based on allegations that Triyar LLC was dissolved before Fireman's Fund issued the Policy and that Triyar LLC "pretended to accept over $23 million in insurance proceeds" from Fireman's Fund based on various claims under the Policy for Hurricane Ike damage (including claims based on damage at locations other than Greenspoint Mall and San Jacinto Mall), without disclosing that Triyar, LLC, the Named Insured under the Policy, did not exist and did not own or lease any of the properties damaged by Hurricane Ike. The trial court severed these claims into a separate case.[3]

Fireman's Fund filed a plea to the jurisdiction asserting that all of the Triyar Parties other than Triyar LLC lacked standing to sue because they are not parties to the Policy. Fireman's Fund also asserted that Triyar, LLC lacks standing because it has no insurable interest under the Policy and suffered no financial loss. The trial court held a hearing on Fireman's Fund's plea to the jurisdiction and denied the plea. In its order denying the

plea to the jurisdiction, the trial court also granted the Triyar Parties' requests that the Policy be reformed so that GPM and SJM also are included in the definition of "Named Insured" under the Policy.

The jury trial lasted more than a month. When asked in Question 1 if Fireman's Fund had failed to comply with the Policy, the jury answered "no." In response to Question 2, the jury failed to find that Fireman's Fund had violated various provisions of the Insurance Code, but the jury did find that Fireman's Fund failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when Fireman's Fund's liability had become reasonably clear and that this failure caused damages to "any of those listed below." In response to Question 3, the jury found various amounts to be (1) the Replacement Cost Value for damages to the respective mall caused by Hurricane Ike that are covered by the Policy, (2) the Actual Cash Value of the damages to the respective mall caused by Hurricane Ike that are covered by the Policy, (3) the amount of lost Business Income caused by Hurricane Ike that is covered by the Policy, and (4) the amount of temporary repairs caused by Hurricane Ike that are covered by the Policy.

In response to Question 4, the jury found that Fireman's Fund knowingly engaged in the conduct found in Question 2. In response to Question 5, the jury found amounts of additional damages that should be awarded based on the knowing conduct. In response to Question 6, the jury found that Fireman's Fund did not notify the Triyar Parties in writing of the acceptance or rejection of a claim relating to each mall

---

**3.** In the severed case, the trial court later concluded that the claims had become moot. Fireman's Fund appealed to this court, which later dismissed the appeal at the request of Fireman's Fund. *See Fireman's Fund Ins. Co.* *v. Triyar Companies, LLC,* No. 14–14–00025–CV, 2014 WL 2446442, at *1 (Tex. App.–Houston [14th Dist.] May 29, 2014, no pet.) (mem. op., per curiam).

not later than the thirtieth business day after the date Fireman's Fund received all items, statements, and forms required to secure the final proof of loss. In response to Question 10, the jury found that the Triyar Parties failed to substantially comply with the requirement that they actually repair or replace the lost or damaged property with other new property of comparable material and quality as soon as reasonably possible after the loss or damage. In response to Question 11, the jury found that the Triyar Parties' failure to comply found in response to Question 10 was excused because Fireman's Fund's actions made compliance impossible to perform.

No party complained of any alleged irreconcilable conflict in the jury's answers before the trial court discharged the jury.

The Triyar Parties moved the trial court to disregard as immaterial the jury's answer to Question 1 and to render judgment in favor of GPM and SJM based on the jury's remaining findings. Fireman's Fund moved the trial court to disregard the jury's findings in favor of the Triyar Parties on the ground that these findings are immaterial in light of the jury's answers in response to Question 1 and the failure of the Triyar Parties to prove or obtain a jury finding that they suffered any injury independent of the claim under the Policy. Fireman's Fund moved the trial court to render judgment that the Triyar Parties take nothing.

The trial court rendered a take-nothing judgment against the Triyar Parties on the ground asserted in Fireman's Fund's motion, implicitly granting that motion and implicitly denying the Triyar Parties' motion.

## II. ISSUES AND ANALYSIS

On appeal, the Triyar Parties assert two issues. Under their first issue, they argue the trial court erred in rendering a take-nothing judgment and disregarding the findings favorable to the Triyar Parties on the ground asserted by Fireman's Fund in its post-trial motion. The Triyar Parties assert that the conflict between the jury's findings should be resolved by disregarding the finding in response to Question 1 and giving effect to the other findings. Under their second issue, the Triyar Parties assert that, if the conflict cannot be reconciled, this court should reverse and remand for a new trial.

In addition to responding to the Triyar Parties' issues and arguments, Fireman's Fund also asserts by cross-points various issues Fireman's Fund claims would have vitiated the jury's findings favoring the Triyar Parties or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict.[4] *See* Tex. R. App. P. 38.2(b) (stating that "[w]hen the trial court renders judgment notwithstanding the verdict on one or more questions, the appellee must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict"). Under its first cross-point, Fireman's Fund asserts, among other things, the following:

(1) Based on the jury's findings as to Actual Cash Value, Fireman's Fund paid more than required under the Policy for the covered loss or damage on an Actual Cash Value basis.

---

4. Fireman's Fund need not have preserved error in the trial court as to any of these issues. *See Ingram v. Deere,* 288 S.W.3d 886, 893 (Tex. 2009) (holding prevailing party on motion for judgment notwithstanding the verdict need not preserve error on cross point raised under Texas Rule of Appellate Procedure 38.2(b)).

(2) No evidence supports the jury's impossibility finding in response to Question 11.

(3) The Triyar Parties were not entitled to payment on a Replacement Cost basis because the Triyar Parties have not actually repaired or replaced the damaged or lost property.

(4) The evidence is legally insufficient to allow the Triyar Parties to recover damages based on lost Business Income.

(5) The Policy provides no separate coverage for an element of loss called "temporary repairs."

(6) The jury's findings in response to Questions 2(B), 4, and 6 are immaterial and do not entitle the Triyar Parties to a judgment in their favor.

We presume, without deciding, that the trial court erred in rendering a take-nothing judgment on the ground asserted in Fireman's Fund's motion to disregard the jury findings favorable to the Triyar Parties, and we address the foregoing issues raised under Fireman's Fund's first cross-point.

### A. Based on the jury's findings, did Fireman's Fund pay the amounts required under the Policy on an Actual Cash Value basis?

As to San Jacinto Mall, it is undisputed that (1) Fireman's Fund paid $3,814,273; (2) the applicable deductible was $2,062,147; (3) the sum of these numbers is $5,876,420; and (4) the jury found that the Actual Cash Value of the damage caused by Hurricane Ike and covered by the Policy is $4,400,000.[5] Thus, based on the jury's finding as to Actual Cash Value, Fireman's Fund paid $1,476,420 more than the amount required to be paid under the Policy for the covered loss or damage to San Jacinto Mall on an Actual Cash Value basis.

As to Greenspoint Mall, it is undisputed that (1) Fireman's Fund paid $262,483; (2) the applicable deductible was $1,964,673; (3) the sum of these numbers is $2,227,156; and (4) the jury found that the Actual Cash Value of the damage caused by Hurricane Ike and covered by the Policy is $2,200,000.[6] Thus, based on the jury's finding as to Actual Cash Value, Fireman's Fund paid $27,156 more than the amount required to be paid under the Policy for the covered loss or damage to Greenspoint Mall on an Actual Cash Value basis.

Based on the jury findings as to Actual Cash Value, Fireman's Fund paid a total of $1,503,576 more than the amount required to be paid under the Policy for the covered loss or damage to the malls on an Actual Cash Value basis.

### B. Does the record contain legally sufficient evidence to support the jury's answer to Question 11?

In response to Question 10, the jury found that the Triyar Parties failed to substantially comply with the requirement that they actually replace or repair the lost or damaged property with other new property of comparable material and quality and that they make these repairs as soon as reasonably possible. In response to

---

5. Because the statement-of-facts section of the appellants' brief contains these propositions, and Fireman's Fund has not contradicted them, we accept these statements as true. *See* Tex. R. App. P. 38.1(g); *Johnson,* 2013 WL 151622, at *1. In any event these statements are not disputed by the parties.

6. The statement-of-facts section of the appellants' brief contains statements as to the amount Fireman's Fund paid and the amount of the applicable deductible, and Fireman's Fund has not contradicted them, so we accept these statements as true. *See* Tex. R. App. P. 38.1(g); *Johnson,* 2013 WL 151622, at *1. In any event these statements are not disputed by the parties.

Question 11, the jury found that the Triyar Parties' failure to comply found in response to Question 10 was excused. The trial court instructed the jury that this failure to comply would be excused only if Fireman's Fund's actions made compliance impossible.[7] Thus, the jury found that the Triyar Parties' failure to comply was excused because Fireman's Fund's actions made compliance impossible. Fireman's Fund asserts that the evidence is legally insufficient to support this finding.[8]

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

Under the unambiguous language of the Policy, Fireman's Fund determines the value of the lost or damaged property at "Replacement Cost," as of the time of the loss or damage, except that (1) the insured may make a claim for loss or damage covered by the Policy on an Actual Cash Value basis; and (2) Fireman's Fund will not pay on a Replacement Cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced. "Replacement Cost" means "the cost to replace with new property of comparable material and quality and used for the same purpose without deduction for depreciation." Under the Policy, when paying for loss or damage on a Replacement Cost basis, Fireman's Fund will not pay more than the least of the following: (1) the applicable limit of insurance, (2) the Replacement Cost of the lost or damaged property, or (3) the amount the insured actually spends that is necessary to repair or replace the lost or damaged property. Thus, the amount that Fireman's Fund must pay as to a claim on a Replacement Cost basis cannot be determined until the amount that the insured actually spends on the necessary repairs and replacement is known.

None of the Triyar Parties made a claim on an Actual Cash Value basis; instead, the Triyar Parties[9] made claims on a Replacement Cost basis. Under the unambiguous language of the Policy, Fireman's Fund "will not pay on a Replacement Cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced," and the repairs and replacement must be made as soon as reasonably possible after the loss or damage. *See Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*, 261 S.W.3d 861, 862–64 (Tex. App.–Dallas 2008, pet. denied). The trial

7. The trial court did not define the term "impossible."

8. In a post-submission letter brief, the Triyar Parties assert that Fireman's Fund may not challenge the sufficiency of the evidence to support the jury's answer to Question 11 because Fireman's Fund requested submission of this question and did not object to the jury charge based on this legal-insufficiency complaint. This argument lacks merit. *See* Tex. R. Civ. P. 279 (stating that "[a] claim that the

evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant"); *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

9. The trial evidence indicates that Triyar LLC actually made the claims, but we presume for the sake of argument that each of the Triyar Parties made the claims.

evidence supports the jury's finding in response to Question 10 that the Triyar Parties failed to substantially comply with the requirement that they actually replace or repair the lost or damaged property with other new property of comparable material and quality.

In determining whether the record contains legally sufficient evidence to support the finding that Fireman's Fund's actions made it impossible for the Triyar Parties to repair the two malls, we presume, without deciding, that impossibility is an excuse in this context.[10] Fireman's Fund paid more than $4 million on the claims for the two malls. Based on the jury's findings as to Actual Cash Value, the amount Fireman's Fund paid is $1,503,576 more than the amount required to be paid under the Policy for the covered loss or damage to the malls on an Actual Cash Value basis. The Policy provides coverage for more than seventy properties in four states. Trial evidence shows that Triyar Companies, Inc. f/k/a Triyar Companies, LLC ("Triyar, Inc."), one of the Triyar Parties, is owned by Bob Yari and his two brothers. Yari indicated in his testimony that his brothers and he use Triyar, Inc. as the asset management company for all their real estate and that Triyar, Inc. manages all of the properties covered under the Policy.[11] During his trial testimony, Yari agreed that more than $3.3 million that Fireman's Fund paid was transferred to two entities owned by Yari. One of these entities is a limited partner in SJM, and the other entity owns the other limited partner in SJM.

Yari testified that "Triyar" was prevented from replacing the roofs at the two malls by Fireman's Fund's refusal to "pay their ACV on a fair number" and by Fireman's Fund's "refusal to sit down and figure out a number that they would agree to." According to Yari, if Fireman's Fund had said, "we're okay with this number," a contractor could have done the work and then been paid by Fireman's Fund. Yari stated that "we just didn't have the wherewithal at that point to replace these two roofs without either the payment or the agreement to pay." Though Yari stated that "we would not have been able to raise that money to replace the roof," there was no trial evidence as to whether any of the Triyar Parties applied for and was refused refinancing of the bank debt for either mall or sought a new bank loan or other financing to pay for repairs to either mall during the operative period.

In response to Fireman's Fund's argument that no evidence supports the jury's impossibility finding, the Triyar Parties provide argument and citations to cases, but they do not cite any trial evidence that they claim raises a genuine fact issue as to impossibility. At oral argument, the Triyar Parties asserted that it was impossible for them to repair the malls because: (1) Fireman's Fund significantly undervalued Replacement Cost Value; (2) the two malls were struggling and had sustained lost business income; and (3) Fireman's Fund did not pay for any of the temporary repairs to the malls. Presuming the truth of these statements, they do not raise a genuine fact issue as to whether Fireman's Fund's actions made it impossible for the Triyar Parties to pay for repairs to either of the malls. Under the applicable standard of review, we conclude that the evidence at trial would not enable reasonable

---

**10.** Thus, we do not address the Triyar Parties' argument that Fireman's Fund waived its argument that impossibility cannot be an excuse in this context by failing to object to Question

11 on this basis or by requesting the submission of Question 11.

**11.** Yari testified that Triyar, Inc. does not own any of the properties.

and fair-minded people to find that Fireman's Fund's actions made it impossible for the Triyar Parties to actually repair or replace the lost or damaged property at either of the malls with other new property of comparable material and quality. *See Huffines v. Swor Sand & Gravel Co.*, 750 S.W.2d 38, 40–41 (Tex. App.–Fort Worth 1988, no writ) (concluding evidence was legally insufficient to support the defense of impossibility). Because the evidence supports the jury's finding in response to Question 10, the Triyar Parties may not recover the Replacement Cost Value for damages to the two malls found by the jury in response to subpart (1) of Question 3.

## C. Is the evidence legally sufficient to support a recovery of lost Business Income?

In response to subpart (3) of Question 3, the jury found that as to each mall, Hurricane Ike caused $250,000 in lost Business Income and that the Policy covered these losses. The definition of Business Income used in the jury charge was the same definition contained in the Business Income coverage of the Policy. Under this coverage, Fireman's Fund will pay for the lost Business Income sustained by the insured due to a necessary suspension of operations caused by direct physical loss or damage at the premises in question caused by or resulting from a covered cause of loss.

Under the unambiguous language of the Policy, as to loss or damages caused by or resulting from a hurricane, there is an eighteen-day deductible for this coverage, and Fireman's Fund will only pay for lost Business Income sustained by the insured due to a necessary suspension of operations after the first eighteen days immediately following the direct physical loss or damage caused by Hurricane Ike. Though the trial court did not specifically instruct the jury that lost Business Income had to be sustained by the insured due to a necessary suspension of operations after the first eighteen days immediately following the direct physical loss or damage caused by Hurricane Ike, the trial court asked the jury to find the amount of lost Business Income covered by the Policy, and the plain wording of the Policy requires these elements.[12]

The general manager of Greenspoint Mall testified that the mall was closed for nine days due to Hurricane Ike, and the general manager of San Jacinto Mall testified that the mall was closed for fifteen days due to Hurricane Ike. There was no evidence that either mall was closed longer than eighteen days. Under the applicable standard of review, we conclude that the trial evidence would not enable reasonable and fair-minded people to find lost Business Income sustained by any of the Triyar Parties due to a necessary suspension of operations after the first eighteen days immediately following the direct physical loss or damage caused by Hurricane Ike. Therefore, the trial evidence is legally insufficient to support the award of any damages to any of the Triyar Parties based on lost Business Income. *See Kennedy Con., Inc. v. Forman*, 502 S.W.3d 486, 497–98 (Tex. App.–Houston [14th Dist.] 2016, pet. filed).

---

**12.** In any event, the trial court refused Fireman's Fund's request that the court instruct the jury as to these requirements for coverage of lost Business Income. Thus, to the extent an objection or request is required to consider these elements in a legal-sufficiency review, Fireman's Fund satisfied this requirement.

*See Allen v. American General Finance, Inc.*, 251 S.W.3d 676, 688–89 (Tex. App.–San Antonio 2007, pet. granted, jdgmt. vacated w.r.m.) (holding that when trial court submits erroneous charge over proper objection, appellate court measures sufficiency of evidence against charge trial court should have submitted).

**D. Does the Policy provide separate coverage for an element of loss called "temporary repairs" or "temporary repairs caused by a hurricane"?**

■ In response to subpart (4) of Question 3, the jury found an amount for each mall that the jury determined was "[t]he amount, if any, of temporary repairs caused by Hurricane Ike that are covered by the Policy." The trial court did not define the term "temporary repairs" or provide a specific instruction as to how the jury should make the determination.

The trial court submitted this question to the jury over Fireman's Fund's objection that the Policy does not provide a policy benefit for "temporary repairs" and that it was impermissible to submit this item without a definition. Under the unambiguous language of the Policy, there is no separate coverage for an element of loss called "temporary repairs" or "temporary repairs caused by a hurricane." Though the jury found these amounts to be covered by the Policy, the Policy provides many different coverages, and we have no way of determining the coverage on which the jury based its findings.

In Question 3, the trial court did not ask the jury what amount of money would fairly and reasonably compensate any of the Triyar Parties for any damage caused by any conduct of Fireman's Fund. Instead, the trial court asked the jury to find the sums of money that "would fairly and reasonably represent the following [amounts for the Replacement Cost Value,

the Actual Cash Value, lost Business Income, and temporary repairs]."

Significantly, the trial court instructed the jury not to increase or reduce its findings in response to one subpart of Question 3 because of its answers to another subpart of Question 3. In answering subpart (2) of Question 3 the jury found amounts for the "Actual Cash Value of the damage to the property owned by the respective malls caused by Hurricane Ike that are covered under the Policy."[13] On this record, we have no way of knowing whether or to what extent the jury's findings of the amounts of temporary repairs overlap with the findings of the Actual Cash Value for the damages.

For Fireman's Fund to have a duty under the Policy to pay any amount of temporary repairs caused by Hurricane Ike, one or more factual predicates would have to be satisfied under the applicable coverage in the Policy, whether under the "Real and Personal Property Coverage Section" or under the Extra Expense coverage. For example, the Triyar Parties assert that the "temporary repairs" are "Extra Expenses" under the Extra Expense coverage. Under this coverage, Fireman's Fund will pay any Extra Expense to

(1) minimize the suspension of business and to continue operations[14] at the described premises, replacement premises, or at temporary locations,

(2) minimize the suspension of business if the insured cannot continue operations, or

(3) "[r]epair or replace any property or to research, replace or restore the lost

---

13. In the charge, the trial court defined "Actual Cash Value" as "the 'Replacement Cost Value' minus 'Depreciation.'" The court defined "Replacement Cost Value" as "the present cost of repairing or replacing damage to any insured property with new property of

comparable material and quality and used for the same purpose."

14. The Policy defines "operations" to mean the insured's "business activities occurring at the described premises" and "the tenantability of the described premises."

information on damaged valuable papers and records to the extent it reduces the amount of loss that otherwise would have been payable under [the Business Income with Extra Expense Coverage Endorsement]." [15]

The Policy defines "Extra Expense" as "necessary expenses [the insured] incur[s] during the period of restoration that [the insured] would not have incurred if there had been no direct physical loss or damage to covered property caused by or resulting from a covered cause of loss." The term "period of restoration" means "the period of time that begins with the date of direct physical loss or damage caused by or resulting from any covered cause of loss at the described premises and ends on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." Under the Policy, Fireman's Fund determines the amount of Extra Expense based on "the excess of the total expenses [the insured] incur[s] in an attempt to continue operations over and above the expenses [the insured] would have incurred during the same period had no loss or damage occurred." Fireman's Fund reduces the amount of the Extra Expense to the extent the insured can

return operations to normal and discontinue the Extra Expense. If the insured does not resume operations or does not resume operations as quickly as possible, Fireman's Fund pays an amount based on the length of time it would have taken to resume operations as quickly as possible.[16]

Given the parameters of the Extra Expense coverage, we cannot conclude that the jury's findings as to the amounts of "temporary repairs" constitute findings as to the amounts of Extra Expenses covered under the Policy.

The Triyar Parties cite testimony by the adjuster Fireman's Fund assigned to these claims. The adjuster, the Triyar Parties point out, believed the Policy covers temporary repairs.[17] The adjuster did not state that there is an independent coverage for temporary repairs, nor did he identify the part of the Policy that he believed provides coverage for temporary repairs.[18] In any event, the adjuster's belief does not change the unambiguous language of the Policy.

We do not know and have no way of determining the coverage on which the jury based its "temporary repairs" findings. Nor do we have any way of knowing the extent to which the findings of the amounts of temporary repairs overlap with

15. The most Fireman's Fund will pay under this coverage for any one loss is $250,000.

16. The Extra Expense coverage and the Business Income coverage are both found in an endorsement entitled, "Property–Gard [sic] Select Endorsement – Business Income with Extra Expense Coverage." We presume that the eighteen-day deductible applicable to "Business Income with Extra Expense" does not apply to the Extra Expense coverage.

17. The adjuster also testified that he had Fireman's Fund advance an initial $2 million for San Jacinto Mall "as an advance payment toward temporary roofing, clean-up costs, whatever was needed to be allocated toward."

18. The Triyar Parties assert that there was a fact issue about whether the amounts Fireman's Fund paid were part of the " 'actual cash value' payment," which they claim the jury resolved in its answer to "Question 3(b)." No "Question 3(b)" can be found in the jury charge. In any event, the trial court did not ask the jury to determine whether the amounts Fireman's Fund paid were part of the "actual cash value" payment in Question 3 or in any other part of the jury charge. In its answers to Question 3, the jury did not address the payments that Fireman's Fund had made.

the findings of the Actual Cash Value for the damages.[19]

Under the clear wording of the Policy, there is no separate coverage for an element of loss called "temporary repairs" or "temporary repairs caused by a hurricane," and subpart (4) of Question 3 (regarding temporary repairs) did not plainly request a finding that the factual prerequisites of a particular coverage in the Policy had been satisfied as to the amounts of temporary repairs. Absent satisfaction of the factual predicates applicable to a particular coverage, any temporary repairs caused by Hurricane Ike are not covered under the Policy. We conclude that subpart (4) of Question 3 is immaterial rather than defective, and that the jury's answers to this part of the charge cannot support a judgment for the Triyar Parties. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 839–40 (Tex. 2000); *OnCor Elec. Delivery Co. v. Murillo*, 449 S.W.3d 583, 595 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (en banc); *Lone Starr Multi–Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 698–700 (Tex. App.–Houston [1st Dist.] 2011, no pet.).

### E. Are the Triyar Parties entitled to judgment based on the liability findings in response to Questions 2(B) or 4?

■ In response to Question 2(B), the jury found liability for bad faith. In its answer to Question 4, the jury found that Fireman's Fund knowingly committed the conduct amounting to bad faith. But, as explained above, Fireman's Fund paid more than the amounts found by the jury for the Actual Cash Value of the property damage, and the other findings do not support the award of any damages against Fireman's Fund. Question 3—the sole damage question—was predicated on an affirmative answer to one of the first two questions, yet, there was no specific question in the charge as to the amount of bad-faith damages or as to any delay damages suffered as a result of the bad-faith conduct. Because Fireman's Fund paid more than the amount of the only legally viable damage findings made by the jury, there is no basis for awarding the Triyar Parties any actual damages based on any of the bad-faith claims.[20] Therefore, the Triyar Parties are not entitled to judgment based on the findings in response to Question 2(B) or Question 4.[21] *See Lundstrom v.*

**19.** The Triyar Parties assert that "at the very least" the record contains a disputed fact issue as to whether Fireman's Fund's payment of Actual Cash Value included payment for the any of the amounts of temporary repairs found by the jury. The Triyar Parties maintain that the jury resolved this fact issue in the Triyar Parties' favor when the jury found Fireman's Fund "had not paid for temporary repairs covered under the [Policy] in good faith after liability became reasonably clear." In the charge, the trial court did not ask the jury to determine whether Fireman's Fund had paid for any temporary repairs covered under the Policy. Though the jury found that Fireman's Fund had failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when Fireman's Fund's liability had become reasonably clear, the charge did not ask the jury to specify what liability had become reasonably clear.

Even presuming the jury found that liability for the claim was clear as to each of the amounts found in response to Question 3, the jury did not make any findings as to the nature of Fireman's Fund's payments, and the jury may have included the amounts found in response to the "temporary repairs" subpart of Question 3 in the jury's answers to the "Actual Cash Value" subpart.

**20.** The jury was not asked to make any findings as to any amount of damages caused by Fireman's Fund's alleged delay in paying the amounts it paid under the Policy, nor was the jury asked to make a finding as to the date or dates by which a reasonable insurer would have made payments under the Policy.

**21.** As Fireman's Fund points out, based on the jury's findings as to Actual Cash Value, Fireman's Fund paid a total of $1,503,576

*USAA*, 192 S.W.3d 78, 96 (Tex. App.–Houston [14th Dist.] 2006, pet. denied).

### F. Are the Triyar Parties entitled to judgment based on the liability findings in response to Question 6?

■ The Triyar Parties asserted claims for alleged violations of the Prompt Payment of Claims Act under Insurance Code section 542.060. *See* Tex. Ins. Code § 542.060 (West, Westlaw through 2015 R.S.). The only finding the Triyar Parties obtained of a violation of the Prompt Payment of Claims Act was the jury's finding in response to Question 6 that Fireman's Fund violated Insurance Code section 542.056. *See* Tex. Ins. Code § 542.056(a) (requiring insurer, subject to two exceptions, to notify a claimant in writing of the insurer's acceptance or rejection of a claim not later than the fifteenth business day after the date the insurer receives all items, statements, and forms the insurer needs to secure final proof of loss) (West, Westlaw through 2015 R.S.); *id.* § 542.059(b) (providing for a 15–day extension of all claims-handling deadlines under the Prompt Payment of Claims Act in the event of a weather-related catastrophe or major natural disaster) (West, Westlaw through 2015 R.S.).

We presume the following: (1) the Triyar Parties can bring a claim for actual damages under the Policy against Fireman's Fund as part of a claim under the Prompt Payment of Claims Act; (2) the jury's finding in response to Question 1 does not bar recovery under this claim or make the jury's findings in response to Question 6 immaterial; and (3) the Triyar Parties can recover 18% interest as damages under section 542.060 without any jury finding as to the extent of the alleged

delay in the payment of the claims. Nonetheless, even under these presumptions, the Triyar Parties as a matter of law cannot recover under Insurance Code section 542.060 unless Fireman's Fund is liable for a claim under the Policy. *See* Tex. Ins. Code § 542.060(a) (stating "[i]f an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the [person claiming under the policy], in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees"); *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (holding that absent recovery under the insurance policy there can be no recovery under the predecessor statute to Insurance Code section 542.060); *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291–92 (Tex. 2001) (holding that insured could not recover under predecessor statute to Insurance Code section 542.060 unless the insurer was liable under the insurance policy); *Primo v. Great Am. Ins. Co.*, 455 S.W.3d 714, 721–22 (Tex. App.–Houston [14th Dist.] 2014, pet. granted) (concluding that insured cannot recover under Insurance Code section 542.060 unless the insurer is liable to the insured under the insurance policy).

Because the Triyar Parties are not entitled to judgment based on any liability of Fireman's Fund under the Policy, the Triyar Parties may not recover based on their claims under Insurance Code section 542.060. *See* Tex. Ins. Code § 542.060; *Boyd*, 177 S.W.3d at 922; *Bonner*, 51 S.W.3d at 291–92; *Primo*, 455 S.W.3d at 721–22. Therefore, the Triyar Parties are not entitled to judgment based on the findings in response to Question 6. *See* Tex.

more than the amount required to be paid under the Policy for the covered loss or damage to the malls on an Actual Cash Value

basis. The total amount of "temporary repairs" found by the jury is $1,250,000.

Ins. Code § 542.060; *Boyd*, 177 S.W.3d at 922; *Bonner*, 51 S.W.3d at 291–92; *Primo*, 455 S.W.3d at 721–22.

## G. Did the appellants preserve error as to the irreconcilable-conflict-in-the-jury-answers issue?

■ Under their second issue, the Triyar Parties assert that, if this court cannot reconcile the conflict between the jury's answers, this court should reverse and remand for a new trial. The Triyar Parties failed to raise this objection before the trial court discharged the jury. Under binding precedent from this court, the Triyar Parties thereby waived the complaint and cannot now successfully claim that they are entitled to a new trial based on an irreconcilable conflict in the jury's answers.[22] *See Meek v. Onstad*, 430 S.W.3d 601, 605–06 (Tex. App.–Houston [14th Dist.] 2014, no pet.); *Swallow v. QI, LLC*, No. 14–10–00859–CV, 2012 WL 952246, at *6 (Tex. App.–Houston [14th Dist.] Mar. 20, 2012, pet. denied) (mem. op.); *Bejjani v. TRC Servs., Inc.*, No. 14–08–00750–CV, 2009 WL 3856924, at *5 (Tex. App.–Houston [14th Dist.] Nov. 19, 2009, no pet.) (mem. op.).

## III. CONCLUSION

Presuming that the trial court erred in rendering a take-nothing judgment on the ground asserted in Fireman's Fund's motion to disregard the jury findings favorable to the Triyar Parties, we conclude that a judgment that the Triyar Parties take nothing is appropriate based on some of Fireman's Fund's arguments under its first cross-point.

Based on the jury's findings as to Actual Cash Value, Fireman's Fund overpaid the Actual Cash Value of the property damage as to both malls by a total of more than $1.5 million. The trial evidence is legally insufficient to support the jury's finding that Fireman's Fund's actions made it impossible for the Triyar Parties to actually repair or replace the lost or damaged property at either of the malls with other new property of comparable material and quality. Because the evidence supports the jury's finding in response to Question 10, the Triyar Parties may not recover the Replacement Cost Value for damages to the two malls found by the jury. The trial evidence is legally insufficient to support the award of any damages to any of the Triyar Parties based on lost Business Income. Subpart (4) of Question 3 regarding temporary repairs is immaterial, and the jury's answers to this part of the charge cannot support a judgment for the Triyar Parties.

Because Fireman's Fund paid more than the amount of the only legally viable damage findings made by the jury, there is no

---

**22.** The Triyar Parties admit that they did not voice this complaint before the trial court discharged the jury but they argue that this action is not required to preserve error. This court's precedent requires a party to raise this issue before the trial court discharges the jury to avoid waiving the complaint. *See, e.g., Meek*, 430 S.W.3d at 605–06; *Bejjani*, 2009 WL 3856924, at *5. The cases the Triyar Parties cite do not hold otherwise. *See Beltran v. Brookshire Grocery Co.*, 358 S.W.3d 263, 268–70 (Tex. App.–Dallas 2011, pet. denied) (stating that "[t]here is no question that if answers to jury questions are in conflict, an objection must be raised before the verdict is received," and concluding that the jury's findings did not irreconcilably conflict); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 314–19 (Tex. App.–Dallas 2004, pet. denied) (reversing judgment based on irreconcilable conflict in jury's answers without mentioning whether appellant raised the complaint before the trial court discharged the jury); *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 689–92 (Tex. App.–Dallas 2000, no pet.) (same as *Ford Motor Company v. Miles*); *Straite v. Krisman*, 737 S.W.2d 80, 82–84 (Tex. App.–Houston [14th Dist.] 1987, no writ) (same as *Ford Motor Company v. Miles*).

basis for awarding the Triyar Parties any actual damages based on any of the bad-faith claims, and the Triyar Parties are not entitled to judgment based on the findings in response to Question 2(B) or Question 4. Likewise, because the Triyar Parties are not entitled to judgment based on any liability of Fireman's Fund under the Policy, they may not recover based on their claims under Insurance Code section 542.060, and the Triyar Parties are not entitled to judgment based on the findings in response to Question 6.[23]

We thus sustain Fireman's Fund's first cross-point to the extent Fireman's Fund asserts the arguments addressed above, and we affirm the trial court's judgment that the Triyar Parties take nothing against Fireman's Fund.[24]

---

**23.** Neither in their appellate briefing on their issues nor in their briefing in response to Fireman's Fund's cross-points do the Triyar Parties assert that they are entitled to a judgment based on any claims other than common-law bad faith, a claim under Insurance Code section 541.151 based on a violation of Insurance Code section 541.060(a)(2)(A), and a claim under Insurance Code section 542.060 based on a violation of Insurance Code section 542.056. *See* Tex. Ins. Code §§ 541.060, 541.151, 542.056, 542.060 (West, Westlaw through 2015 R.S.).

**24.** We need not and do not address the remainder of Fireman's Funds arguments under its first cross-point or its second cross-point and the arguments thereunder. Though in its second cross-point Fireman's Fund purports to assert jurisdictional issues as to the Triyar Parties' standing to assert claims based on the Policy, under this court's precedent, this issue does not raise a jurisdictional point that must be addressed before the merits. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (concluding that lack of "standing" to sue on a contract does not deprive the courts of jurisdiction).