**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed May 31, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00210-CV

## O.C.T.G., L.L.P. AND SOJOURN PARTNERS, L.L.C., Appellants

## V.

## LAGUNA TUBULAR PRODUCTS CORPORATION AND LTP REAL ESTATE, L.L.C., Appellees

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2013-44749**

## D I S S E N T I N G   O P I N I O N

I respectfully disagree with the majority's conclusion that the trial evidence is legally sufficient to support the jury's finding in response to the question on the value of the land for the retention pond (Question 7). Because the trial evidence is legally insufficient to support this finding or to prove any market value of the land, the trial court should have disregarded the jury's answer and awarded the second plaintiff actual damages of $255,000 (the uncontested amount) rather than

$405,000. Based on this substantial reduction in the second plaintiff's recovery, this court should reverse all awards of attorney's fees to the second plaintiff and remand to the trial court for a determination of attorney's fees.

I also disagree with the majority's decision not to address whether the trial evidence is legally sufficient to support a finding that the $967,645 in transportation costs were reasonable expenses. Binding precedent calls this court to do so because the issue almost certainly will arise again on retrial and the interests of judicial economy weigh in favor of addressing it now.

**A.    The court errs in concluding that the trial evidence is legally sufficient to support the jury's finding in response to Question 7.**

In issue 8, appellant/defendant Sojourn Partners, L.L.C. asserts that the trial court erred in awarding appellee/plaintiff LTP Real Estate, L.L.C. $150,000 against Sojourn based on the jury's finding in response to Question 7 because, among other things, the evidence is legally insufficient to support this finding.

Under the Purchase and Sale Agreement ("Purchase Agreement"), Sojourn agreed to provide, on its remaining contiguous property such rainwater-detention areas, if any is required by law, as may be necessary to accommodate all new roadways, improvements, and structures proposed as of December 31, 2009, to be built on the land. LTP Real Estate agreed to reimburse Sojourn for the cost of all rainwater detention and construction required by the Purchase Agreement. On LTP Real Estate's behalf, appellee/plaintiff Laguna Tubular Products Corporation paid Sojourn via appellant/defendant O.C.T.G., L.L.P. $255,000 for a rainwater-detention pond. Sojourn kept the money, and did not have a pond built. Trial testimony showed that, because the law required Laguna's worksite to have a pond, LTP Real Estate needed to build a pond on two acres of its own land.

In Question 7, the trial court asked the jury, "What is the value of [LTP Real

2

Estate's] land on which a rainwater detention area is to be built?" The jury answered "$150,000." The trial court did not submit any instructions with Question 7. Sojourn objected to the charge and requested the trial court to ask about the "market value" or, alternatively, the "fair-market value" of the LTP Real Estate land on which a rainwater detention area is to be built (the "Pond Land"). The trial court overruled this objection and refused to ask the jury about the market value or fair market value of the property. On appeal, Sojourn asserts that the trial court erred in doing so and that this court should review the sufficiency of the evidence to support a finding of the market value of the Pond Land.

### 1. The trial court erred in overruling Sojourn's objection to Question 7.

If the trial court erred in overruling Sojourn's objection that the trial court should inquire as to the Pond Land's market value, then this court must determine whether the trial evidence is legally sufficient to support a jury finding based on the market value of the Pond Land.[1] Presuming for the sake of argument that Question 7 had defects other than the failure to ask about the Pond Land's market value, Sojourn was not required to complain as to these other defects to get a sufficiency review based on market value.[2] Sojourn did not have the burden of submitting a substantially correct damage question for LTP Real Estate's breach-of-contract claim against Sojourn, and Sojourn could preserve error simply by getting an adverse ruling on an objection during the charge conference.[3] To the

---

[1] *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 407–09 (Tex. 2016); *Triyar Cos., LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 525 n.12 (Tex. App.—Houston [14th Dist.] 2017, pet. filed); *Sacks v. Hall*, 481 S.W.3d 238, 246–49 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

[2] *See Seger*, 503 S.W.3d at 407–09; *Triyar Cos., LLC*, 515 S.W.3d at 525 n.12; *Sacks*, 481 S.W.3d at 246–49.

[3] *See* Tex. R. Civ. P. 274; *Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994); *Pan v. Liu*, No. 14-12-00831-CV, 2014 WL 3512834, at *2 (Tex. App.—Houston [14th Dist.] Jul. 15,

extent Question 7 had other defects, Sojourn waived them by failing to object.[4]

According to the majority, Sojourn objected to Question 7 on the ground that the trial court should ask about market value at the time of trial or about fair market value at the time of trial.[5] This characterization is not accurate. In Question 7, the trial court asked about value at the time of trial, and no party objected that the value should be determined as of any other time. Sojourn urged the trial court to use "market value" or, in the alternative, "fair market value" in Question 7 rather than "value." Sojourn did not object that the trial court failed to inquire about market value or fair market value at the time of trial.

In the charge the trial court indicated that if the charge used a word in a way that differed from the word's ordinary meaning, the trial court would provide a proper legal definition. The trial court did not define the term "value" in the jury charge. So, absent a valid objection from Sojourn, we would measure the sufficiency of the evidence supporting the jury's answer to Question 7 based upon the commonly understood meaning of "value."[6] In the context of this case, that meaning would be "monetary worth" and would not be limited to fair market value.[7] The question the trial court submitted allowed the jury to base its finding on any determination as to the property's monetary worth, without any requirement

---

2014, no pet.) (mem. op.).

[4] *See Kormanik v. Seghers*, 362 S.W.3d 679, 688 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (measuring sufficiency of the evidence based on the question submitted to the jury when no party asserted a valid objection at the charge conference to any defect in the question).

[5] *See ante* at 21 & n.8.

[6] *See In re Athans*, 478 S.W.3d 128, 134–35 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding); *Barnhart v. Morales,* 459 S.W.3d 733, 745 (Tex. App.–Houston [14th Dist.] 2015, no pet.).

[7] *See Rowan Cos., Inc. v. Wilmington Trust Co.*, 305 S.W.3d 698, 709–12 (Tex. App.—Houston [14th Dist.] 2009), pet. granted, judgm't vacated w.r.m.).

4

that the value be the property's market value.[8]  In this context, the proper measure of LTP Real Estate's damages for the loss of use of the property is the property's market value.[9]  Thus, the trial court erred in overruling Sojourn's objection to Question 7, and this court should conduct a legal-sufficiency review of the trial evidence of the land's market value at the time of trial.[10]  Market value is the price that a willing buyer would offer a willing seller when neither is under compulsion to buy or sell.[11]

### 2.  The trial evidence is legally insufficient to support the jury's finding in response to Question 7.

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.[12]  We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[13] Then, we determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue.[14]   The

---

[8] *See id.*

[9] *See Hall v. Hubco, Inc.*, 292 S.W.3d 22, 34–36 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

[10] *See Seger*, 503 S.W.3d at 407–09; *Triyar Cos., LLC*, 515 S.W.3d at 525 n.12; *Sacks*, 481 S.W.3d at 246–49; *Hall*, 292 S.W.3d at 34–36.  The majority concludes that, even though the rainwater-detention area has not yet been built, the proper measure of LTP Real Estate's damages would be based on the value of the land years ago when Sojourn breached the Purchase Agreement by not having the area constructed.  Even if this were the correct measure of damages under Texas law, no party objected to Question 7's failure to submit this measure, and therefore this court cannot review the sufficiency of the evidence under this measure. *See Kormanik*, 362 S.W.3d at 688.

[11] *See City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex. 2001) (stating that market value is price that would be offered by willing buyer to willing seller, when neither is under compulsion to buy or sell).

[12] *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005).

[13] *See id.* at 827.

[14] *See id.*

5

factfinder is the only judge of witness credibility and the weight to give to testimony.[15]

At trial, Eddie Anaya testified that Laguna operates under a county requirement to build a retention pond, so Laguna would have to build the retention pond on its own, on LTP Real Estate's property. According to Anaya, the retention pond would take two acres of land, and he estimated each acre had a minimum value of $75,000. Anaya noted that that this sum was the amount LTP Real Estate paid per acre when it bought the 26.48 acres from Sojourn under the Purchase Agreement. Anaya testified that LTP Real Estate's minimum amount of damages would be $150,000 for the two acres needed to build the retention pond.

Rowland testified that the county told Laguna that Laguna was violating the retention-pond requirement. According to Rowland, Laguna had looked into alternatives to building a retention pond and determined its only option was to give up part of its yard and build a pond on LTP Real Estate's land. Like Anaya, Rowland estimated the pond would consume about two acres of land. Anaya testified that LTP Real Estate paid $75,000 per acre when it purchased the land.

The evidentiary value of expert testimony comes from its basis, not from the mere fact that the expert has said it.[16] Conclusory opinions add nothing to the body of evidence. When an expert appraisal witness offers no basis for the expert's opinion or the basis of the expert's opinion provides no support for the expert's conclusions, then the law deems the proffered proof conclusory and incapable of providing probative evidence, even if no party objects.[17] Rowland and Anaya did not testify as expert witnesses; instead, they testified as representatives of the

---

[15] *See id.* at 819.

[16] *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 829 (Tex. 2014).

[17] *See id*.

corporate property owner under Texas's property-owner rule.

Under the property-owner rule, an owner stands qualified to testify to the value of the owner's property; nonetheless, as set forth in the Supreme Court of Texas's most recent pronouncement, the testimony must meet the "same requirements as any other opinion evidence."[18] The property-owner rule falls under Texas Rule of Evidence 701, which allows a lay witness to provide opinion testimony if the testimony is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.[19] Based on the presumption that an owner is familiar with the owner's property and its value, the property-owner rule stands as an exception to the requirement that a witness otherwise must establish the witness's qualifications to express an opinion on land values.[20] Under the rule, an owner's valuation testimony fulfills the same role as expert testimony.[21]

Because the law treats property-owner testimony as the functional equivalent of expert testimony, we must judge property-owner testimony by the same standards.[22] Thus, as with expert testimony, an owner's property valuation may not be based solely on the owner's *ipse dixit.*[23] That means a property owner may not simply echo the phrase "market value" and state a number to substantiate the owner's claim; rather, the property owner must provide the factual basis on which the opinion rests.[24] Meeting this burden is essential but not onerous, particularly in

---

[18] *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (quoting *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)) (internal quotations omitted).

[19] *See* Tex. R. Evid. 701; *Justiss*, 397 S.W.3d at 157.

[20] *See Justiss*, 397 S.W.3d at 157.

[21] *See id*.

[22] *See id*. at 159.

[23] *See id*.

[24] *See id*.

light of the resources available today.[25]  The witness must substantiate the valuation; a naked assertion of "market value" does not suffice.[26]  Even if unchallenged, the property owner's testimony must support the verdict, and conclusory or speculative statements do not.[27]  This court's precedent holds that evidence of the amount paid in the past to purchase property, by itself, is legally insufficient to support a finding as to the property's market value at a later date.[28]

LTP Real Estate bought the two acres at issue from Sojourn as part of a 26.48-acre tract in a complex business transaction under which Sojourn agreed to build a retention pond on its remaining land.  The 26.48-acre purchase took effect on December 31, 2009.  The question submitted to the jury asked for the value of the property at the time of trial, almost six years after the purchase.  Presuming for the sake of argument that this time frame is incorrect under Texas law, because no party objected to Question 7 on this ground, this court still measures the sufficiency of the evidence to support a finding of the property's market value as of the time of trial.[29]

Six years matters.  Even if LTP Real Estate had paid $150,000 in the past to purchase the two acres in question, evidence of that past purchase, by itself, does not amount to legally sufficient evidence to support a finding as to the property's market value six years later.[30]  Other than evidence of this purchase, the only

---

[25] *See id.*

[26] *See id.*

[27] *See id.*

[28] *See DZM, Inc. v. Garren*, 467 S.W.3d 700, 702–05 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Lee v. Dykes*, 312 S.W.3d 191, 195–99 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[29] *See Kormanik*, 362 S.W.3d at 688.

[30] *See DZM, Inc.*, 467 S.W.3d at 702–05; *Lee*, 312 S.W.3d at 195–99.

proffered proof of the Pond Land's value at trial was Anaya's conclusory statement that each acre of land had a value of at least $75,000 and that LTP Real Estate's minimum damages would be $150,000 for the two acres needed to build the retention pond. This *ipse dixit* as to the land's value and LTP Real Estate's damages does not amount to legally sufficient evidence of the market value of the two acres.[31] Indeed, this testimony does not address the price that a willing buyer would offer to a willing seller to purchase the two acres, when neither is under compulsion to buy or sell.[32] The hole in the proof makes the trial evidence legally insufficient to support the jury's finding in response to Question 7.[33]

Because the trial evidence is legally insufficient to prove any market value for the land in question, the trial court should have disregarded the jury's answer to Question 7, and awarded LTP Real Estate a judgment of $255,000 (the uncontested amount) against Sojourn rather than a judgment of $405,000.[34] Thus, this court should sustain issue 8 to the extent Sojourn asserts legal insufficiency of the evidence to support the jury's finding in response to Question 7. Doing so would substantially reduce LTP Real Estate's recovery, and so the court would have to reverse all awards of attorney's fees to LTP Real Estate and remand to the trial court for a determination of the amount of reasonable and necessary attorney's fees that should be awarded to LTP Real Estate based on its recovery of $255,000 in actual damages.[35]

---

[31] *See DZM, Inc.*, 467 S.W.3d at 702–05; *Lee*, 312 S.W.3d at 195–99.

[32] *See City of Harlingen*, 48 S.W.3d at 182.

[33] *See DZM, Inc.*, 467 S.W.3d at 702–05; *Lee*, 312 S.W.3d at 195–99.

[34] *See DZM, Inc.*, 467 S.W.3d at 702–05; *Lee*, 312 S.W.3d at 195–99.

[35] *See Bluelinx Corp. v. Texas Const. Sys., Inc.*, 363 S.W.3d 623, 630–31 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

### 3. *The court's legal-sufficiency rationale lacks merit.*

The majority instead concludes that the trial evidence suffices to support the jury's finding in response to Question 7.[36] The trial court did not submit a benefit-of-the-bargain measure of damages in Question 7. The trial court did not ask the jury to find an amount of damages that would restore LTP Real Estate to the economic position it would have occupied had Sojourn fully performed the Purchase Agreement.[37] Nor did the trial court ask the jury to find the land's value at the time of Sojourn's breach. Instead, the trial court asked the jury to find the land's current value, or monetary worth, without any requirement that the value be the property's market value.[38]

The majority relies upon an apparent conclusion that under Texas law, the proper measure of damages for LTP Real Estate's breach-of-contract claim is the benefit-of-the-bargain measure and that the jury is to measure such damages at the time of the breach.[39] Even if the majority were correct on this point, no party objected to the trial court's failure to submit the benefit-of-the-bargain measure in Question 7 or to the trial court's failure to instruct the jury to determine the damages as of the time of the breach. So, on appeal, we are not to measure the sufficiency of the evidence under this standard, even if it were the correct standard under Texas law.[40]

---

[36] *See ante* at 20–25, 27.

[37] *See Kormanik*, 362 S.W.3d at 689–91.

[38] *See Rowan Cos., Inc.*, 305 S.W.3d at 709–12.

[39] *See ante* at 20–21.

[40] *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of

**B. Now is the time to address the legal sufficiency of the evidence to support a finding that the transportation costs were reasonable expenses.**

On appeal, OCTG argues that under the *Gossett* line of cases[41] the trial evidence is legally sufficient to support the jury's finding of $1,562,127 in damages based on "[t]he reasonable and necessary expenses incurred in the past by Laguna . . . ." In response to Question 8A and Question 9, the jury found this amount of damages, as requested by Laguna. Laguna sought these damages based on three categories:

- (1) $327,632 that Laguna paid to have joints re-inspected ("Reinspection Costs"),
- (2) $967,645 in transportation costs ("Transportation Costs"), and
- (3) $276,850 that Laguna paid Cimarex as reimbursement for reinspection expenses that Cimarex had incurred ("Cimarex Costs").

The majority correctly concludes that (1) the trial evidence is legally sufficient to support a finding that the Reinspection Costs were reasonable and necessary expenses, and thus the trial evidence is legally sufficient to support a finding of at least $327,632 in damages for Laguna's breach-of-contract and breach-of-warranty claims; and (2) applying the standard from the *Gossett* line of cases, the trial evidence is legally insufficient to support a finding that the Cimarex Costs were reasonable expenses. But, the analysis does not end there.

OCTG argued in its briefing that the trial evidence is legally insufficient to support a finding that the Transportation Costs were reasonable expenses, and Laguna responded arguing that the evidence is legally sufficient. Laguna and

---

evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards).

[41] *See McGinty v. Hennen*, 372 S.W.3d 625, 627–28 (Tex. 2012); *Dallas Railway and Terminal Co. v. Gossett*, 294 S.W.2d 377, 382–83 (Tex. 1956).

11

OCTG focused on this issue during oral argument in this court, and each of them submitted post-submission briefs on this issue. Yet, the majority chooses not to address this point, reasoning that doing so would not affect the appellate remedy.[42]

A   remand for a new trial in accordance with an opinion holding the evidence legally insufficient to support a finding that the Transportation Costs were reasonable expenses would not appear to be the same appellate remedy as a remand for a new trial in accordance with an opinion that does not address this issue.  In the former case, if the trial evidence of the Transportation Costs in the second trial closely resembled the trial evidence in the first trial on this point, the trial court would be required by this court's opinion to grant a motion for new trial by OCTG if the jury found the full amount of damages Laguna sought in the second trial.  In the latter case, the trial court would not be required to do so.

In any event, presuming for the sake of argument that there is no absolute requirement that this court address the Transportation Costs issue because the court may reverse the trial court judgment as to Laguna's breach-of-contract and breach-of-warranty claims and remand for a new trial without reaching this point, this court still should address the Transportation Costs issue if it is likely to arise again on retrial and if the interest of judicial economy weighs in favor of addressing the issue now.[43]  Both considerations call the court to action.

Laguna likely will seek the same damages in the second trial that Laguna sought in the first trial.  And, OCTG likely will argue legal insufficiency of the evidence to support a finding that the full amount of those damages were

---

[42] *See ante* at 16, n.3.

[43] *See Hernandez v. Great Am. Ins. Co. of New York*, 464 S.W.2d 91, 93  (Tex. 1971); *Galveston Centr. Appraisal Dist. v. Valero Refining-Texas L.P.*, 463 S.W.3d 177, 189 n.11 (Tex. App.—Houston [14th Dist.] 2015), *rev'd on other grounds by*, 519 S.W.3d 66 (Tex. 2017); *Garza v. Cantu*, 431 S.W.3d 96, 107 n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

reasonable expenses. As to the Reinspection Costs and the Cimarex Costs, the trial court and the parties can find guidance in this court's analysis. But, not so for the Transportation Costs.

In the second trial, as in the first, the parties almost certainly will face the issue of whether the Transportation Costs were reasonable expenses, and the evidence regarding the Transportation Costs may closely resemble the evidence of these costs in the first trial. Laguna might speculate that this court viewed the evidence as legally sufficient to support a finding that the Transportation Costs were reasonable expenses, reasoning that the court would have addressed the issue if the court viewed the evidence as insufficient. Operating under this premise, Laguna might offer the same evidence as to the Transportation Costs again. And, if the jury finds in Laguna's favor for the full amount in the second trial, in the second appeal this court might reverse and remand for a third trial of these claims because the evidence is legally insufficient to support a finding that the Transportation Costs were reasonable expenses.

The parties already have spent nearly $2 million in attorney's fees in this case, and they now face a second trial on the main claims in this litigation. At considerable time and expense, the parties have provided thorough briefing and argued the Transportation Costs issue in this appeal. Addressing this issue today not only would save the litigants time and money but also would conserve judicial resources, cut transaction costs, and serve the interest of judicial economy. Binding precedent demands that the court address this issue now.[44]

**C. The trial evidence is legally insufficient to support a finding that the $967,645 in transportation costs were reasonable expenses.**

If this court were to address the Transportation Costs issue, the court should

---

[44] *See Valero Refining-Texas L.P.*, 463 S.W.3d at 189 n.11; *Garza*, 431 S.W.3d at 107 n.7.

13

find the trial evidence legally insufficient to support a finding that the Transportation Costs were reasonable expenses.

Laguna points to evidence of amounts charged or paid as evidence of reasonable expenses. But this evidence does not necessarily reflect the reasonableness of those amounts because parties operating in a freedom-of-contract realm can agree to pay amounts that are unreasonable.

Texas's "paramount public policy" favoring freedom of contract mandates that Texas courts not lightly interfere with parties' freedom to contract as they see fit.[45] Under Texas law, parties can even agree to things some might consider extreme, as long as their agreement does not violate the law or public policy.[46] This freedom of contract means that contractors generally can charge unreasonably high prices for their goods and services, and parties have the freedom to choose to pay unreasonably high prices for goods and services.[47] Thus, proof of the amounts charged or paid, by itself, is not legally sufficient evidence that these charges are reasonable and necessary; instead, the trial record must contain separate evidence that raises a fact issue regarding the reasonableness and necessity of the expenses or costs in question.[48]

To have raised a fact issue as to reasonableness and necessity of expenses, Laguna had to have shown more than simply "the nature of the injuries, the character of and need for the services rendered, and the amounts charged

---

[45] *Fairfield Indus. v. EP Energy E & P, Co.*, 531 S.W.3d 234, 249 (Tex. App.—Houston [14th Dist.] 2017, pet. filed).

[46] *Id.*

[47] *See id.*

[48] *See Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 200–01 (Tex. 2004); *Gossett,* 294 S.W.2d at 382–83; *O & B Farms, Inc. v. Black,* 300 S.W.3d 418, 422–23 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

therefor."[49] The law requires some other "evidence showing that the charges are reasonable."[50]

Laguna offered evidence at trial showing that it had paid $957,645 in Transportation Costs after termination of the Finishing Agreement (from August 2013 through March 2015) to transport pipe to contractors to perform inspection and threading services. Proof that Laguna incurred these expenses, by itself, is legally insufficient to show that the expenses were reasonable and necessary.[51] No trial witness testified that these expenses were reasonable or that they were necessary. Yet, even if we presume for the sake of argument that these expenses were necessary, the evidence still would not meet the standard.

When asked how Laguna chose trucking vendors, William Rowland, Laguna's Chief Operating Officer, answered: "Who — at that point when things were busy, as cheap as possible and whoever is available. Freight was very hard to come by, but we were able to negotiate pretty much a flat rate with almost everybody at $200 a load." Rowland did not testify that all of these charges were "$200 a load," only that almost all of them were at "$200 a load." Rowland did not state whether $200 per load was a reasonable cost. Rowland also indicated that it was hard to find transportation contractors and that he chose "whoever [was] available" yet also sought transportation charges that were "as cheap as possible." Unlike the testimony regarding the selection of reinspection contractors, Rowland's testimony on this point did not include statements that Rowland selected transportation contractors who would charge a reasonable price.

The trial evidence as to the process by which Laguna selected the

---

[49] *Gossett*, 294 S.W.2d at 383.

[50] *Id.*; *McGinty*, 372 S.W.3d at 627.

[51] *See McGinty*, 372 S.W.3d at 627–28; *Mustang Pipeline Co.,* 134 S.W.3d at 200–01; *Gossett,* 294 S.W.2d at 382–83; *O & B Farms, Inc.,* 300 S.W.3d at 422–23.

transportation contractors did not reveal factors that were considered to ensure the reasonableness of the ultimate price.[52]   Under the *Gossett* line of cases, the trial evidence is legally insufficient to support a finding that the Transportation Costs were reasonable expenses.[53]   And, this court should say so because the parties surely will face the issue again on retrial.  Having already incurred a hefty sum in attorney's fees and with another trial still ahead, they deserve the benefit of this court's guidance on the issue.

## D.    Conclusion

With the trial evidence legally insufficient to prove any market value for the land in question, the trial court should have disregarded the jury's answer to Question 7, and awarded LTP Real Estate a judgment in the uncontested amount ($255,000) against Sojourn rather than a judgment of $405,000.  This court should sustain issue 8 to the extent Sojourn challenges the legal sufficiency of the evidence to support the jury's answer to Question 7.  Following this course would require a big cut in LTP Real Estate's damages, and so the court would have to reverse all awards of attorney's fees to LTP Real Estate and remand to the trial court for a determination of the amount of reasonable and necessary attorney's fees that should be awarded to LTP Real Estate based on its recovery of $255,000 in actual damages.  Because the court does not do so, I respectfully dissent.

With a new trial on the horizon, the court should review the trial evidence as to the $957,645 in Transportation Costs.  A legal-sufficiency review would reveal that the process by which Laguna selected the transportation contractors did not ensure the reasonableness of the ultimate price.  So, this court should deem the trial

---

[52] *See McGinty*, 372 S.W.3d at 627–28.

[53] *See id.*

16

evidence legally insufficient to support a finding that the Transportation Costs were reasonable expenses. Because the majority refuses to address the issue and instead chooses to stand silent, I respectfully dissent.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby. (Jamison, J., majority).